UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: JENNIFER CHOE-GROVES, JUDGE

_____
                                                  :
ONE WORLD TECHNOLOGIES, INC.,                     :
                                                  :
                    Plaintiff,                    :          Court No. 18-00200
                                                  :
             v.                                   :
                                                  :
UNITED STATES, UNITED STATES                      :
DEPARTMENT OF HOMELAND SECURITY,                  :
UNITED STATES CUSTOMS AND BORDER                  :
PROTECTION, and COMMISSIONER KEVIN K.             :
MCALEENAN,                                        :
                                                  :
                    Defendants.                   :
_____           :


## **ORDER**

Upon consideration of plaintiff's motion for temporary restraining order and preliminary injunction, defendants' motion to stay this action, the parties' respective responses thereto, and upon consideration of all other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion for temporary restraining order and preliminary injunction is denied; And it is further

**ORDERED** that plaintiff's motion to stay this action is granted; And it is further

**ORDERED** that within thirty days of a final decision resolving the questions of patent infringement and validity, the parties are to file a joint status report with the Court.


                                    _____
                                           JENNIFER CHOE-GROVES, JUDGE

Dated: _____ , 2018
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: JENNIFER CHOE-GROVES, JUDGE

———————————————————————— :
                                   :
ONE WORLD TECHNOLOGIES, INC.,      :
                                   :
                 Plaintiff,     :         Court No. 18-00200
                                   :
               v.              :
                                   :
UNITED STATES, UNITED STATES      :
DEPARTMENT OF HOMELAND SECURITY,  :
UNITED STATES CUSTOMS AND BORDER   :
PROTECTION, and COMMISSIONER KEVIN K. :
MCALEENAN,                         :
                                   :
              Defendants.    :
———————————————————————— :

## DEFENDANTS' MOTION TO STAY

       Pursuant to Rules 1 and 7 of the Rules of this Court, defendants, the United States et al.,

move to stay this case.  The grounds for this motion are set forth in the accompanying

memorandum.

                                     Respectfully submitted,

                                     JOSEPH H. HUNT
                                     Assistant Attorney General

               By:       /s/ Amy M. Rubin
                                     AMY M. RUBIN
                                     Assistant Director

                                     /s/ Guy Eddon
Of counsel:                          GUY EDDON
Michael Heydrich                 EDWARD F. KENNY
Office of Chief Counsel           Trial Attorneys
International Trade Litigation      Civil Division, Dept. of Justice
U.S. Customs and Border Protection    Commercial Litigation Branch
                                     International Trade Field Office
                                     26 Federal Plaza
                                     New York, New York 10278
                                     Tel. No. 212-264-9240 or 9232
                                     *Attorneys for Defendant*

Dated: September 21, 2018

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................2

SUMMARY OF ARGUMENT ................................................................................10

ARGUMENT ...........................................................................................................11

   I.   THE GOVERNMENT'S MOTION TO STAY SHOULD BE GRANTED ...................11

      A. Legal Standard ...........................................................................................11

      B. Staying This Case Will Further Judicial Economy And
         Avoid Inconsistent Results In Multiple Forums .........................................13

         1. The Stage Of This Proceeding Favors A Stay .....................................15

         2. A Stay Will Streamline The Issues For Trial.......................................16

         3. A Stay Will Not Cause Undue Prejudice To Either Party ...................19

   II.  ONE WORLD'S MOTION FOR INJUNCTIVE RELIEF SHOULD BE DENIED ........20

      A. Legal Standard ...........................................................................................20

      B. One World Has Not Established That It Is Entitled To Injunctive Relief .................21

         1. One World Is Unlikely To Succeed On The Merits .............................22

            i.   The Court Should Not Review The Validity Of The '319 Patent
                Because The Patentholder Cannot Be Joined .........................22

            ii.  One World Is Unlikely To Succeed On Its Challenge To
                CBP's Infringement Determination ........................................24

         2. One World Has Not Established That It Will Suffer
           Irreparable Harm Absent Injunctive Relief.........................................30

         3. The Balance Of Hardships Precludes An Injunction ...........................34

         4. An Injunction Would Not Serve The Public Interest............................35

   CONCLUSION.........................................................................................................37

# TABLE OF AUTHORITIES

## Cases

A123 Sys., Inc. v. Hydro-Quebec,
    626 F.3d 1213 (Fed. Cir. 2010) ................................................................. 24

Abbott Labs. v. Cordis Corp.,
    710 F.3d 1318 (Fed. Cir. 2013) ................................................. 12, 13, 35

Advanced Steel Recovery, LLC v. X-Body Equip., Inc.,
    808 F.3d 1313 (Fed. Cir. 2015) ................................................................. 25

Altana Pharma AG v. Teva Pharms. USA, Inc.,
    566 F.3d 999 (Fed. Cir. 2009) ................................................................... 30

Am. Inst. for Imp. Steel. Inc. United States,
    8 CIT 314, 600 F. Supp. 204 (Ct. Int'l Trade 1984) ................................ 22

Am. Life Ins. Co. v. Stewart,
    300 U.S. 203 (1937) ................................................................................... 12

An Giang Agric. & Food Imp. Exp. Co. v. United States,
    350 F. Supp. 2d 1162 (Ct. Int'l Trade 2004) ........................................... 12

ASCII Corp. v. STD Entm't USA, Inc.,
    844 F. Supp. 1378 (N.D. Cal. 1994) ......................................................... 15

Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.,
    2013 WL 1969247 (M.D. Fla. May 13, 2013) .......................................... 13

Bio-Technology Gen. Corp. v. Genentech, Inc.,
    80 F.3d 1553, 38 USPQ2d 1321 (Fed. Cir. 1996) ................................... 24

Brixham Sols. Ltd. v. Juniper Networks Inc., 13-cv-00616,
    2014 WL 1677991 (N.D. Cal. Apr. 28, 2014) .......................................... 15

Capriola Corp. v. LaRose Indus. LLC,
    2013 WL 1868344 (M.D. Fla. Mar. 11, 2013) ......................................... 16

Celsis In Vitro, Inc. v. CellzDirect, Inc.,
    664 F.3d 922 (Fed. Cir. 2012) ................................................................... 30

Chamberlain Grp., Inc. v. Techtronic Indus. Co. Ltd.,
    676 Fed. Appx. 980 (Fed. Cir. 2017) ............................................. 2, 3, 32

Chamberlain Grp., Inc. v. Techtronic Indus. Co.,
    315 F. Supp. 3d 977 (N.D. Ill. 2018) ..................................................... 3, 4

Cherokee Nation of Okla. v. United States,
    124 F.3d 1413 (Fed. Cir. 1997) ........................................................................... 11

Church of Scientology of Cal. v. United States Army,
    611 F.2d 738 (9th Cir. 1979) ............................................................................... 13

Corning Gilbert Inc. v. United States,
    896 F. Supp. 2d 1281 (Ct. Int'l Trade 2013) .................................................. 19, 31

Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,
    142 F.3d 1266 (Fed. Cir. 1998) ........................................................................... 24

Eaton Corp. v. United States,
    395 F. Supp. 2d 1314 (Ct. Int'l Trade 2005) ...................................................... 35

Ethicon, Inc. v. Quigg,
    849 F.2d 1422 (Fed. Cir. 1988) ........................................................................... 15

FMC Corp. v. United States,
    3 F.3d 424 (Fed. Cir. 1993) ................................................................................. 22

Fort Vancouver Plywood Co. v. United States,
    860 F.2d 409 (Fed. Cir. 1988) ............................................................................. 13

Giorgio Foods, Inc. v. United States and U.S. Int'l Trade Comm'n,
    Court No. 03-00286, 2013 WL 363312 (Ct. Int'l Trade 2013) ............................ 11

Gould v. Control Laser Corp.,
    705 F.2d 1340 (Fed. Cir. 1983) ........................................................................... 15

GPX Int'l Tire Corp. v. United States,
    32 CIT 1183, 587 F. Supp. 2d 1278 (Ct. Int'l Trade 2008) ................................ 22

Intendis GmbH v. Glenmark Pharms., Inc.,
    822 F.3d 1355 (Fed. Cir. 2016) ........................................................................... 25

Int'l Fresh Trade Corp. v. United States,
    26 F. Supp. 3d 1363 (Ct. Int'l Trade 2014) ........................................................ 30

Landis v. North Am. Co.,
    299 U.S. 248 (1936) ............................................................................................ 11

Manhattan Shirt Co. v. United States,
    2 CIT 270 (Ct. Int'l Trade 1981) ......................................................................... 22

Microsoft Corp. v. GeoTag, Inc.,
    817 F.3d 1305 (Fed. Cir. 2016) ........................................................................... 25

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ................................................................................... 30

*Nat'l Hand Tool Corp. v. United States*,
   14 CIT 61 (1990) ............................................................................... 36, 37

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................... 21

*Patlex Corp. v. Mossinghoff*,
   758 F.2d 594 (Fed. Cir. 1985) ................................................................... 15

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 25

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
   2013 WL 4475940 (N.D. Cal. Aug. 16, 2013) ..................................... 15, 16

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
   193 F. Supp. 3d 133 (N.D.N.Y. 2016), 714 Fed. Appx. 1022 (Fed. Cir. 2018)
   (2018 WL 1285539) ................................................................................... 19

*Qingdao Taifa Group Co., Ltd. v. United States*,
   581 F.3d 1375 (Fed. Cir. 2009) ................................................................. 20

*Rensselaer Polytechnic Institute v. Apple Inc.*,
   No. 13-cv-633, 2014 WL 201965 (N.D.N.Y. Jan. 15, 2014) ................... 12

*Roche Molecular Sys., Inc. v. Cepheid*,
   No. 14-cv-3228, 2015 WL 124523 (N.D. Cal. Jan. 7, 2015) .................... 16

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
   2012 WL 7170593 (C.D. Cal. 2012) ......................................................... 12

*Shandong Huarong Gen. Grp. Corp. v. United States*,
   24 CIT 1279, 122 F. Supp. 2d 1367 (Ct. Int'l. Trade 2000) .................... 31

*Silfab Solar, Inc. v. United States*,
   296 F. Supp. 3d 1295 (Ct. Int'l Trade), *aff'd*, 892 F.3d 1340 (Fed. Cir. 2018) ........................ 20

*SKF USA Inc. v. United States*,
   Court No. 10-00284, 2012 WL 1999685 (Ct. Int'l Trade June 4, 2012) ................... 12

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008) ................................................................. 16

*Telemac Corp. v. Teledigital, Inc.*,
   450 F. Supp. 2d 1107 (N.D. Cal. 2006) .................................................... 16

iv

Texas Instruments, Inc. v. Cypress Semiconductor Corp.,
90 F.3d 1558 (Fed. Cir. 1996) ........................................................................... 24

Union Steel Mfg. Co. v. United States,
896 F. Supp. 2d 1330 (Ct. Int'l Trade 2013) ..................................................... 12

United States v. L.A. Tucker Truck Lines,
344 U.S. 33 (1952) ............................................................................................. 36

United States v. Sweet Little Mexico Corp.,
2012 WL 91225 Court Nos. 10-00372, 09-00236 (Ct. Int'l Trade Jan. 12, 2012) .................. 34

VastFame Camera, Ltd. v. Int'l Trade Comm'n,
386 F.3d 1108 (Fed. Cir. 2004) ......................................................................... 24

Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,
944 F.2d 870 (Fed. Cir. 1991) ........................................................................... 24

Washington Int'l Ins. Co. v. United States,
25 C.I.T. 207 (2001) .......................................................................................... 13

Wavetronix LLC v. EIS Elec. Integrated Sys.,
573 F.3d 1343 (Fed. Cir. 2009) ......................................................................... 25

Weinberger v. Romero-Barcelo,
456 U.S. 305 (1982) ........................................................................................... 21

Winter v. Natural Res. Def. Council,
555 U.S. 7 (2008) ............................................................................................... 21

Yakus v. United States,
321 U.S. 414 (1944) ........................................................................................... 35

Zenith Radio Corp. v. United States,
710 F.2d 806 (Fed. Cir. 1983) ..................................................................... 22, 30

**Statutes**

19 U.S.C. § 1337 ...................................................................................................... 6

19 U.S.C. § 1337(a)(1)(B)(i) .................................................................................. 24

19 U.S.C. § 1337(c) ............................................................................................... 23

19 U.S.C. § 1337(j) .................................................................................................. 7

28 U.S.C. § 1338(a) ............................................................................................... 23

28 U.S.C. § 1581(a) ............................................................................................... 31

28 U.S.C. § 2201(a) .................................................................................................. 23

35 U.S.C. § 282(a) .................................................................................................... 16

35 U.S.C. § 314(a) ............................................................................................... 16, 17

35 U.S.C. § 315(e)(2).................................................................................................. 17

35 U.S.C. § 316(a)(11)............................................................................................. 8, 17

**Rules**

Fed. R. Civ. P. 16(a)(1) .............................................................................................. 23

Fed. R. Civ. P. 16(b)(1).............................................................................................. 23

Fed. R. Civ. P. 26(f)(4) .............................................................................................. 23

**Regulations**

19 C.F.R. § 177 ......................................................................................................... 14

19 C.F.R. § 210.75 .................................................................................................... 34

19 C.F.R. § 210.76 ................................................................................................. 8, 34

19 C.F.R. § 210.77 .................................................................................................... 34

19 C.F.R. § 210.79 .................................................................................................... 34

83 FR 45676-01, 2018 WL 4282258 (Sept. 10, 2018) ................................................. 8

**Patents**

U.S. Patent No. 7,161,319 (filed Jan. 9, 2007) ................................................. 2, *passim*

**Other Authorities**

ITC Inv. No. 337-TA-1016 (Sept. 4, 2018), 2018 WL 4237946 ................................... 8

HQ H295697 (July 20, 2018)................................................................................ 7, *passim*

HQ H300129 (Sept. 7, 2018) ....................................................................... 6, 9, 14, 33

*Black's Law Dictionary* (5th ed. 1979)...................................................................... 13

https://www.ryobitools.com...................................................................................... 32

# LIST OF EXHIBITS

| Exhibit Number | Description |
|---|---|
| 1 | Garage door openers for sale at Home Depot's website |
| 2 | TechTronic Industries Company Limited Press Release (Sept. 7, 2000) |
| 3 | Home Depot web page for the Ryobi GD126 garage door opener |
| 4 | Home Depot web page for the Ryobi GD201 garage door opener |
| 5 | D&B Duns Private Company Insight for One World Technologies, Inc. |
| 6 | One World Customs Entry Summary (CBP Form 7501) (Confidential) |
| 7 | Opposition Of Appellee International Trade Commission To Techtronic's Emergency Motion To Partially Stay Remedial Orders, *Chamberlain Grp., Inc. v. Int'l Trade Comm'n*, Appeal No. 18-2002 (Fed. Cir.), ECF no. 34-1 (Sept. 20, 2018) |

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: JENNIFER CHOE-GROVES, JUDGE

_____
                                                :
ONE WORLD TECHNOLOGIES, INC.,                   :
                                                :
                         Plaintiff,             :        Court No. 18-00200
                                                :
            v.                                  :
                                                :
UNITED STATES, UNITED STATES                    :
DEPARTMENT OF HOMELAND SECURITY,                :
UNITED STATES CUSTOMS AND BORDER                :
PROTECTION, and COMMISSIONER KEVIN K.           :
MCALEENAN,                                      :
                                                :
                         Defendants.            :
_____         :

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY
AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendants, United States et al. (Government), respectfully move to stay this case and

oppose the motion for a temporary restraining order and preliminary injunction filed by plaintiff,

One World Technologies, Inc. (One World).  By its action, One World seeks to evade the

outcome of more than two years of litigation regarding its Ryobi-branded garage door openers

(GDOs), which have been enjoined from importation by both the U.S. International Trade

Commission (ITC or Commission) and the U.S. District Court for the Northern District of

Illinois.  This Court should deny One World's motion because One World fails to establish

entitlement to the extraordinary remedy of compelling Government action.  Rather, the Court

should stay this case because it is in its earliest stage and One World is simultaneously litigating

the same claims in proceedings already underway at the U.S. Patent and Trademark Office

(PTO), the U.S. District Court for the Northern District of Illinois, the ITC, and the U.S. Court of

Appeals for the Federal Circuit (Federal Circuit).

# BACKGROUND

On January 9, 2007, the PTO issued U.S. Patent No. 7,161,319 (the '319 patent), entitled

"Movable Barrier Operator Having Serial Data Communication," and assigned the patent to The

Chamberlain Group, Inc. (Chamberlain).  By way of background, Chamberlain "entered the

garage door opener market in 1958 … [and currently] sells its garage door openers in several

stores, including Home Depot." *Chamberlain Grp., Inc. v. Techtronic Indus. Co. Ltd.*, 676 Fed.

Appx. 980, 982 (Fed. Cir. 2017); *see also,* Def. Exh. 1 (GDOs for sale at Home Depot).  Claim

no. 1 of the '319 patent reads as follows:

> Claim 1    An improved garage door opener comprising a motor drive unit for
> opening and closing a garage door, said motor drive unit having a
> microcontroller and a wall console, said wall console having a
> microcontroller, said microcontroller of said motor drive unit being
> connected to the microcontroller of the wall console by means of a
> digital data bus.

Figure 1 of the '319 patent, shown below, is a perspective view of a garage including a garage

door opener embodying the invention:



"In May 2016, [Techtronic Industries North America, Inc., One World Technologies, Inc., OWT Industries, Inc., and Ryobi Technologies, Inc. (collectively, TTI)] began selling the Ryobi GD200 garage door opener ('Ryobi GDO')." *Chamberlain Grp.*, 676 Fed. Appx. at 982. "TTI manufactures and sells power tools and accessories under the brand name Ryobi." *Id.* "TTI sells its Ryobi products, including the Ryobi GDO, exclusively through Home Depot." *Id.* at 982-83.  One World is "a wholly owned subsidiary of TTI."  Def. Exh. 2 at 1 (TTI Press Release of Sept. 7, 2000).  One World "and its subsidiary companies produce electric power tools marketed under the Sears, Roebuck and Company's Craftsman line and its own range [of] power tools under the Ryobi brand." *Id.* at 2.

On June 10, 2016, Chamberlain filed two lawsuits in the U.S. District Court for the Northern District of Illinois.  One suit alleged that One World infringed its '319 patent by "making, using, importing, offering for sale and/or selling" the Ryobi GD200, among other products. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 16-cv-06094 (N.D. Ill. filed June 10, 2016), ECF No. 1 at ¶ 39.  The other suit alleged that One World infringed two other Chamberlain patents. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 16-cv-06097 (N.D. Ill. filed June 10, 2016), ECF No. 1 at ¶ 5 and ¶ 7.  This second suit resulted in a jury verdict finding that One World "willfully infringed two of Chamberlain's patents." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 315 F. Supp. 3d 977, 986 (N.D. Ill. 2018).  The court also found that "a permanent injunction is appropriate, and now permanently enjoins TTI from … making, using, selling, or offering to sell in the United States, or importing into the United States the Ryobi GD200, GD200A, and any device no more than colorably different therefrom, until the expiration of the . . . patent[.]" *Chamberlain Grp.*, 315 F. Supp. 3d at 1011.  In a final judgment, the court awarded Chamberlain $5,210,776.60.  ECF no. 772 (July 31, 2018).  One World is

currently appealing the district court's judgment to the Federal Circuit.  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, Appeal No. 18-2103 (Fed. Cir. filed June 25, 2018).

On July 5, 2016, Chamberlain filed a complaint at the ITC alleging that certain GDOs manufactured and imported by One World, among others, infringed the '319 patent.  *Certain Access Control Systems and Components Thereof*, ITC Inv. No. 337-TA-1016; Compl. ¶ 8.

On September 2, 2016, One World filed a motion to stay the first Northern District of Illinois case.  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 16-cv-06094 (N.D. Ill.), ECF no. 28.  One World asked the district court to:

> stay this matter until the determination of the United States International Trade Commission (the "ITC") becomes final In the Matter of Certain Access Control Systems and Components Thereof, Investigation No. 337-TA-1016.  That investigation overlaps with this case; in both matters Plaintiff The Chamberlain Group, Inc. ("Plaintiff") is accusing Defendants of infringing the same patents.

*Id.* at 1.

On September 7, 2016, the district court granted One World's motion to stay the case pending resolution of ITC Investigation No. 337-TA-1016, including appeals.  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 16-cv-06094 (N.D. Ill.), ECF no. 30.  The case remains stayed to this day.

On October 25, 2016, One World filed a petition with the PTO for *Inter Partes Review* (IPR) of the '319 patent, the same patent that Chamberlain asserted in ITC Investigation No. 337-TA-1016 and the lawsuit it filed in the U.S. District Court for the Northern District of Illinois.  *One World Techs., Inc. v. Chamberlain Grp., Inc.*, IPR2017-00126, Paper 1.

On May 4, 2017, the PTO instituted review of all claims of the '319 patent asserted by Chamberlain in the ITC investigation.  *Id.*, Paper 8.

On July 12 and 13, 2017, the ITC held a hearing in Investigation No. 337-TA-1016.  "After the July 2017 ITC hearing, certain of the Respondents redesigned the Original GDOs in

view of evidence presented to the [Administrative Law Judge], and Chamberlain's numerous

judicial admissions about the scope of the '319 patent."  Pl. Mem. In Support Of Pl.'s Mot. For

Temporary Restraining Order And Preliminary Injunction (Pl. Mem.) at 6 (ECF no. 6).  The

redesigned garage door openers are the Ryobi Ultra-Quiet Garage Door Opener, Model

Nos. GD126 and GD201 (collectively, the Redesigned GDOs).  Pl. Mem. at 3.  One World "did

not advise the [Administrative Law Judge] or the Commission of its redesigned products" at any

time during the original investigation, nor did it request that its Redesigned GDOs be reviewed

or potentially carved out of any determination or remedial orders that the ITC might issue.  Def.

Exh. 7 at 10.

On October 23, 2017, Administrative Law Judge Thomas B. Pender issued an Initial

Determination finding that the Ryobi GD200 infringed claims 1-4, 7-12, 15, and 16 of the '319

patent.  *See* ITC Inv. No. 337-TA-1016, Initial Determination (October 23, 2017) (Pl. Exh. B).

The Initial Determination recommended that the ITC issue a Limited Exclusion Order (LEO)

prohibiting the importation of the accused products, including the Ryobi GD200, that infringed

the asserted claims of the '319 patent, as well Cease and Desist Orders against One World,

among others.  *Id.*

On February 1, 2018, the PTO held a hearing in One World's challenge to the validity of

the '319 patent.  *One World Techs., Inc. v. Chamberlain Grp., Inc.*, IPR2017-00126, Paper 36.

On February 14, 2018, which was before the ITC had issued its Final Determination, One

World presented U.S. Customs and Border Protection (Customs or CBP) with "a detailed

description of the GD126 product and how it has been redesigned in order to avoid the asserted

claims of the '319 patent."  HQ H300129 at 22 (Sept. 7, 2018).

On March 23, 2018, the ITC issued: (1) its Final Determination (Pl. Exh. D), finding that

One World had violated Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337);

(2) a LEO barring importation of any garage door openers that infringe one or more of claims 1-

4, 7-12, 15, and 16 of the '319 patent; and (3) a Cease and Desist Order to One World, among

other respondents.  ITC Inv. No. 337-TA-1016, *Limited Exclusion Order* (Pl. Exh. O at 34-37);

*One World Cease and Desist Order* (Pl. Exh. O at 10-16).  The LEO explicitly bars infringing

garage door openers from, *inter alia*, "withdrawal from a warehouse for consumption [in the

United States], for the remaining terms of the '319 patent[.]"  *Limited Exclusion Order* ¶ 1 (Pl.

Exh. O at 35).  The LEO also specifies that:

> [a]t the discretion of U.S. Customs and Border Protection ("CBP") and pursuant
> to the procedures it establishes, persons seeking to import access control systems
> and components thereof that are potentially subject to this Order may be required
> to certify that they are familiar with the terms of this Order, that they have made
> appropriate inquiry, and thereupon state that, to the best of their knowledge and
> belief, the products being imported are not excluded from entry under paragraph 1
> of this Order.  At its discretion, CBP may require persons who have provided the
> certification described in this paragraph to furnish such records or analyses as are
> necessary to substantiate this certification.

*Id.* ¶ 3.

One week after the ITC issued its LEO, on March 30, 2018, One World submitted a

petition to CBP "requesting a ruling that the Redesigned GDOs are not covered by the LEO."  Pl.

Mem. at 7.

On or about May 12, 2018, before receiving a ruling from CBP, One World exported its

Redesigned GDOs from Shanghai, China.  Pl. Mem. at 3.

On May 25, 2018, CBP held an informal hearing on One World's petition for a ruling

regarding the Redesigned GDOs.  Both One World and Chamberlain participated in the hearing.

Pl. Mem. at 7.

On May 28, 2018, the period for Presidential Review under 19 U.S.C. § 1337(j) expired and the ITC's LEO became final.  Compl. ¶ 18.

On or about June 12, 2018, CBP at the Port of Charleston, South Carolina detained the shipment of Redesigned GDOs, Entry No. 442-7562999-4, that One World had exported on or about May 12, 2018.  Pl. Mem. at 3; Def. Exh. 6.

On June 29, 2018, CBP at the Port of Charleston, South Carolina, excluded Entry No. 442-7562999-4, covering 936 Redesigned GDOs (specifically, the Ryobi GD126 garage door opener), from importation into the United States.  Pl. Exh. P.

On July 20, 2018, CBP issued Headquarters Ruling HQ H295697 determining that One World's Redesigned GDOs were subject to the ITC's exclusion order in Investigation No. 337-TA-1016.  Pl. Exh. E.

On July 23, 2018, One World appealed the ITC's final determination to the Federal Circuit.  *Techtronic Indus. Co. Ltd. v. Int'l Trade Comm'n*, Appeal No. 18-2191 (Fed. Cir.), now consolidated with *Chamberlain Grp., Inc. v. Int'l Trade Comm'n*, Appeal No. 18-2002 (Fed. Cir.).

On August 2, 2018, One World filed a petition with the ITC under 19 C.F.R. § 210.76(a) ("Petitions for modification or rescission of exclusion orders, cease and desist orders, and consent orders"), to institute a modification proceeding in order to determine whether its "allegedly redesigned garage door opener products infringe the '319 patent that is the subject of the remedial orders issued in this investigation and for modification of those remedial orders to specify the status of those redesigned products."  ITC Inv. No. 337-TA-1016 (Sept. 4, 2018), 2018 WL 4237946.  In a supplement to its petition for a modification proceeding filed later that same day, One World asserted that Customs had "issued its ruling [HQ H295697], concluding

that the Redesigned GDOs are subject to the Commission's remedial orders." ITC Inv. No. 337-TA-1016, *Supplement to Respondents' Petition for a Modification Proceeding* at 1 (Aug. 2, 2018).

On August 7, 2018, the PTO held a second hearing in One World's challenge to the validity of the '319 patent. *One World Techs., Inc. v. Chamberlain Grp., Inc.*, IPR2017-00126, Paper 53. The statutory deadline for the PTO to issue a final written decision in the matter is November 4, 2018. 35 U.S.C. § 316(a)(11).

On August 10, 2018, One World filed protest no. 1601-18-100231, arguing that the Redesigned GDOs were improperly denied entry into the United States. Pl. Exh. I.

On September 4, 2018, the ITC instituted a modification proceeding with respect to One World's Redesigned GDOs. Pl. Exh. G; 2018 WL 4237946. The ITC ordered the presiding Administrative Law Judge to issue a recommended determination within six months after publication of the Order's notice in the *Federal Register*, or by March 10, 2019. Pl. Exh. G at 3; 83 FR 45676-01, 2018 WL 4282258 (Sept. 10, 2018). A decision on One World's petition for modification of the ITC's exclusion order will conclusively determine whether the ITC's LEO applies to One World's Redesigned GDOs.

On September 7, 2018, CBP issued Headquarters Ruling HQ H300129 denying One World's protest no. 1601-18-100231. The entry at issue in this case and covered by HQ H300129 does "not include any Ryobi GD201 garage door openers." *Id.*, fn. 2. In HQ H300129, CBP noted that the ITC had instituted a Modification Proceeding to consider whether the Redesigned GDOs fall within the scope of the ITC's exclusion order and pointed out that the outcome of the ITC's Modification Proceeding will be controlling:

> Commission determinations under section 337, including all conclusions of law
> and findings of fact (such as a particular construction of a claim limitation and the

corresponding comparison of that construction with features of the products found
to infringe) are binding on CBP and will be applied by CBP with preclusive effect
against products of a respondent identified in a limited exclusion order.  In the
event a later-issued Commission determination includes conclusions of law or
findings of fact that conflict with a prior-issued ruling by CBP under 19 C.F.R.
part 177 or a prior-issued protest review decision by CBP under 19 C.F.R. part
174, the later-issued Commission determination will, by operation of law, modify
or revoke the ruling or protest review decision by CBP.  As such, the outcome of
the modification proceeding at the Commission will have a direct impact on
CBP's views of the admissibility of the merchandise at issue in this protest,
regardless of the outcome of this protest or any appeal therefrom.

*Id.* at 2.

On September 12, 2018, One World asked the Federal Circuit for an emergency stay of

the ITC's Remedial Orders.  *Chamberlain Grp., Inc. v. Int'l Trade Comm'n*, Appeal No. 18-2002

(Fed. Cir.), ECF no. 30 (Emergency Motion).  In its emergency motion to the Federal Circuit,

One World makes the same argument that it raises here, namely that:

Chamberlain has represented in multiple fora that its asserted U.S. Patent No.
7,161,319 ("'319 patent") discloses a wired connection between a controller in a
wall-mounted keypad and a second controller in a motorized "head unit" that
drives a garage door to open or close.  Chamberlain also has represented that the
claims of the '319 patent, which require a "digital data bus" connecting the two
controllers, do not cover wireless communications between these controllers. . . .

Based on Chamberlain's express representations regarding the scope of the '319
patent, [respondent] redesigned its accused garage door openers by replacing the
wired keypad with a keypad that transmits wirelessly to a receiver at the head
unit.

*Id.* at 1-2 (italics in original).

On September 13, 2018, One World filed the instant lawsuit challenging CBP's denial of

its protest no. 1601-18-100231.  Compl. (ECF no. 4).  By its suit, "One World seeks judicial

review of CBP's decision to exclude the Redesigned GDOs and deny One World's protest

pursuant to 28 U.S.C. § 1581(a)."  Pl. Mem. at 9.  More specifically, One World asks this Court

to declare that "the '319 patent would be invalid over the prior art," "that the Redesigned GDOs

do not infringe claims 1-4, 7-12, 15, and 16 of the '319 patent and are admissible into the United

States, and that CBP's exclusion of the subject merchandise was wrongful and contrary to law." Compl. ¶¶ 65-66.  One World further seeks to "[e]njoin CBP from excluding the Redesigned GDOs from entry into the United States pursuant to the Remedial Orders concerning the '319 patent in *Certain Access Control Systems and Components Thereof*, Inv. No. 337-TA-1016." Compl. Prayer for Relief ¶ 7.

Also on September 13, 2018, One World filed a "Motion for Partial Stay of Remedial Order" at the ITC.  ITC Inv. 337-TA-1016, Doc. 655616.

On September 20, 2018, the ITC and Chamberlain both filed responses in the Federal Circuit opposing One World's emergency motion to stay enforcement of the remedial orders. *Chamberlain Grp., Inc. v. Int'l Trade Comm'n*, Appeal No. 18-2002 (Fed. Cir.), ECF nos. 34 and 35.

Both of the Redesigned GDOs, the Ryobi GD126 and the Ryobi GD201 are currently offered for sale at Home Depot's website.  Def. Exhs. 3 and 4.

## SUMMARY OF ARGUMENT

One World is an adjudicated infringer of the '319 patent, and the subject of an ITC exclusion order and a permanent injunction issued by the U.S. District Court for the Northern District of Illinois and affirmed by the Federal Circuit.  Because the issues raised here by One World's motion for temporary restraining order and permanent injunction are already under review by ITC, the Federal Circuit, the PTO, and the U.S. District Court for the Northern District of Illinois, this Court should stay this case pending results in those actions.  In the alternative, the Court should deny One World's motion for injunctive relief because it cannot meet any of the elements required to show its entitlement to the extraordinary remedy it seeks.

**ARGUMENT**

## I.    THE GOVERNMENT'S MOTION TO STAY SHOULD BE GRANTED

For the reasons explained in detail below, the Court should stay this case pending resolution of the underlying patent infringement and validity questions currently being litigated by One World at the ITC, the Federal Circuit, the PTO, and the U.S. District Court for the Northern District of Illinois.

### A.    <u>Legal Standard</u>

"A stay is granted at the court's discretion and must take into consideration the interests of judicial economy and efficiency." *Giorgio Foods, Inc. v. United States and U.S. Int'l Trade Comm'n*, Court No. 03-00286, 2013 WL 363312, at *2 (Ct. Int'l Trade 2013), citing *Landis v. North Am. Co.*, 299 U.S. 248, 257 (1936).  Decisions concerning when and how to stay a case rest "within the sound discretion of the trial court." *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citations omitted).  In exercising that discretion, the court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255; *SKF USA Inc. v. United States*, Court No. 10-00284, 2012 WL 1999685 (Ct. Int'l Trade June 4, 2012) (granting motion to stay pending final disposition of related proceedings at the Federal Circuit); *Union Steel Mfg. Co. v. United States*, 896 F. Supp. 2d 1330, 1333 (Ct. Int'l Trade 2013) (providing a comprehensive list of U.S. Court of International Trade decisions evaluating motions to stay).  "In the exercise of a sound discretion [a court] may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same." *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937).  This Court has previously observed that "a case may properly be stayed pending the outcome of another case (the 'lead' case) even where the 'lead' case may not be potentially dispositive of the case sought to be

stayed – *i.e.*, even where the 'lead' case may, at most, streamline the issues in the case sought to be stayed." *An Giang Agric. & Food Imp. Exp. Co. v. United States*, 350 F. Supp. 2d 1162, 1168 n.9 (Ct. Int'l Trade 2004) (citation omitted).

As is particularly relevant to this matter, courts generally consider three primary factors when determining whether to stay litigation pending institution of an *Inter Partes Review* by the PTO: (1) the stage of the litigation; (2) whether a stay will simplify and streamline the issues that may be presented in subsequent litigation; and (3) whether a stay would cause undue prejudice or a clear tactical disadvantage to the non-moving party. *See, e.g., Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, 2012 WL 7170593, at *3-4 (C.D. Cal. 2012) (applying the three-factor test previously used for analyzing a motion to stay pending *inter partes* reexamination[1] to a motion to stay pending institution of an *inter partes* review); *see also, Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, 2013 WL 1969247, at *1 (M.D. Fla. May 13, 2013) (noting that "[t]he court's inquiry is not limited to these three factors—the totality of the circumstances governs.").

Further, because the issue that One World is asking this Court to decide is also being considered by several other administrative and judicial bodies, consideration of judicial comity is appropriate. Judicial comity is "[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and decisions of another, not as a matter of obligation, but out of deference and respect." *Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409,

---

[1]  Effective September 16, 2012, *inter partes* review replaced *inter partes* reexamination as the avenue for a third party to challenge patent validity at the PTO. *Inter partes* review represents a "new, more streamlined adjudicative proceeding intended to replace the more cumbersome and time-consuming *inter partes* reexamination that could take upwards of three years to conclude." *Rensselaer Polytechnic Institute v. Apple Inc.*, No. 13-cv-633, 2014 WL 201965, at *2 (N.D.N.Y. Jan. 15, 2014) (internal quotations omitted); *see also Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013) (recognizing that the PTO's review process changed "from an examinational to an adjudicative proceeding" (citation omitted)).

412 (Fed. Cir. 1988), quoting *Black's Law Dictionary* (5th ed. 1979).  In particular, "[c]omity is an equitable principal designed to preserve judicial resources and to avoid the embarrassment of conflicting judgments."  *Washington Int'l Ins. Co. v. United States*, 25 C.I.T. 207, 218-19 (2001), citing *Church of Scientology of Cal. v. United States Army*, 611 F.2d 738, 749 (9th Cir. 1979).

**B.     Staying This Case Will Further Judicial Economy And
         Avoid Inconsistent Results In Multiple Forums**

One World has challenged the application of the ITC's exclusion order to its Redesigned GDOs, concomitant with the related issues of infringement and validity of the '319 patent, in six forums:

1. U.S. District Court for the Northern District of Illinois.  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 16-cv-06094 (N.D. Ill. filed June 10, 2016).  This case was filed by Chamberlain against One World for infringement of the '319 patent, among others.  While the case is currently stayed at One World's request pending resolution of the ITC Inv. No. 337-TA-1016 and the related appeal pending before the Federal Circuit, it is likely that One World will assert that the '319 patent is invalid as an affirmative defense and counterclaim to infringement, as One World did in the other N.D Ill. case.  *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 16-cv-06097 (N.D. Ill.), ECF no. 50 (Answer, First Affirmative Defense of Invalidity/Unpatentability at 26-27 and Counterclaim Count Two: Declaration of Invalidity/Unpatentability at 29).

2. U.S. Patent and Trademark Office.  *One World Techs., Inc. v. Chamberlain Grp., Inc.*, IPR2017-00126 (filed October 25, 2016).

3. U.S. Customs and Border Protection.  One World's request to CBP's Intellectual Property Rights Branch for an administrative ruling under 19 C.F.R. Part 177 that its Redesigned GDOs are not subject to the exclusion order in *Certain Access Control Systems and Components Thereof*, ITC Inv. No. 337-TA-1016, *see* HQ H295697 (July 20, 2018) (finding that the Redesigned GDOs are subject to the ITC's LEO); and One World's Protest under 19 C.F.R. Part 174, *see* HQ H300129 (September 7, 2018) (denying One World's protest against the exclusion of the merchandise in Entry No. 442-7562999-4).

4. U.S. Court of Appeals for the Federal Circuit.  *Chamberlain Grp., Inc. v. Int'l Trade Comm'n*, no. 18-2002 (Fed. Cir. filed July 23, 2018).

5. U.S. International Trade Commission. *Certain Access Control Systems and Components Thereof*, ITC Inv. No. 337-TA-1016 (Modification proceeding filed August 2, 2018, and instituted on September 4, 2018).

6. U.S. Court of International Trade. *One World Technologies, Inc. v. United States*, No. 18-00200 (Ct. Int'l Trade filed September 13, 2018).

Of the forums in which One World is contesting or has contested the validity and infringement of the '319 patent, the district court, the PTO, the ITC, and the Federal Circuit are all charged with and accustomed to resolving questions of patent infringement and validity. Chamberlain, the patent owner, is a party to the reviews in all of these forums.[2]  "[L]itigating the validity and infringement issues in these other venues offers certain advantages not available at this Court, and the outcome of those proceedings will streamline the consideration of the issues in the present case." *Otter Products, LLC v. United States*, ECF no. 51 at *8, No. 14-00328 (Ct. Int'l Trade Feb. 19, 2015).  For prudential reasons, as well as for reasons of judicial economy, the Court should stay its review of CBP's denial of One World's protest pending resolution of the underlying patent infringement and validity questions that are already being actively litigated in other forums.

While courts are not required to stay judicial proceedings pending, for example, the PTO's review of a patent involved in a lawsuit, a stay for such purposes is well within the Court's discretion.  *See, e.g., Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." (citation omitted)); *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, 2013 WL 4475940, at *3 (N.D. Cal. Aug. 16, 2013) (conditionally granting motion to stay based

---

[2]  Chamberlain also participated in the hearing before CBP's Intellectual Property Rights Branch.

on filing of petition for PTO review of a patent).  There is a liberal policy in favor of staying proceedings pending the outcome of PTO review proceedings, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery.  *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).  A stay is particularly justified where the outcome of the PTO's review would be likely to assist the court in determining patent validity, and might thereby eliminate the need to try the infringement issue.  *See, e.g., Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

As previously noted, in determining whether a stay is warranted pending the PTO's review of a patent, courts generally consider the following non-exclusive factors: (1) the stage of the case; (2) whether a stay will simplify and streamline the issues that may be presented in subsequent litigation; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party.  *Brixham Sols. Ltd. v. Juniper Networks Inc.*, 13-cv-00616, 2014 WL 1677991, at *1 (N.D. Cal. Apr. 28, 2014); *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, 2013 WL 4475940, at *3 (N.D. Cal. Aug. 16, 2013); *Telemac Corp. v. Telemedital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006).  Each of these factors supports staying this action.

### 1.  <u>The Stage Of This Proceeding Favors A Stay</u>

When evaluating whether the stage of the litigation favors a stay, courts consider, among other factors, "whether discovery is complete and whether a trial date has been set." *Telemac*, 450 F. Supp. 2d at 1111.  This case has only just begun.  No discovery has been exchanged and no trial date has yet been set.  Of all the forums in which One World is pursuing relief from the ITC's exclusion order, this case was filed last.  Because this case is in its earliest stages, "the stage of the case" factor clearly weighs in favor of a stay.

## 2.  A Stay Will Streamline The Issues For Trial

One World has filed a petition for *inter partes* review of the '319 patent challenging

certain claims of the '319 patent, including all of those covered by the ITC's exclusion order.

*One World Techs., Inc. v. Chamberlain Grp., Inc.*, IPR2017-00126 (filed Oct. 25, 2016).

Although duly issued patents have a statutory presumption of validity (35 U.S.C. § 282(a)), the

PTO is empowered to review questions of patent validity where "there is a reasonable likelihood

that the petitioner would prevail with respect to at least 1 of the claims challenged in the

petition."  35 U.S.C. § 314(a); *see also, Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316,

1327 (Fed. Cir. 2008).

Courts routinely stay cases prior to institution of an *inter partes* review by the PTO.  *See,*

*e.g.*, *Roche Molecular Sys., Inc. v. Cepheid*, No. 14-cv-3228, 2015 WL 124523, at *4 (N.D. Cal.

Jan. 7, 2015); *Capriola Corp. v. LaRose Indus. LLC*, 2013 WL 1868344, at *3 (M.D. Fla.

Mar. 11, 2013) ("[B]ecause the PTO apparently will not consume much time [in deciding

whether to institute an IPR] unless the PTO perceives an important patent issue within the PTO's

particular expertise and because an important issue that appears in the litigation also appears to

fall within the PTO's province and particular expertise, prudence commends resort to a stay until

either the PTO declines review or . . . grants and completes review to the benefit of the parties,

the court, and the public.").

A final determination by the PTO on validity of the '319 patent will be issued by

November 4, 2018.  35 U.S.C. § 316(a)(11) ("final determination in an inter partes review [shall]

be issued not later than 1 year after [institution] . . . except that the Director may, for good cause

shown, extend the 1-year period by not more than 6 months.").  Here, the one-year period has

already been extended by six months.  Because the PTO will soon decide whether One World's

challenge to the validity of the '319 has merit, the Court should wait for the PTO's

determination.  35 U.S.C. § 314(a).  If One World succeeds on its IPR petition before the PTO,

the PTO will invalidate the '319 patent and, by consequence, eliminate the need to try the

infringement issue here.

On the other hand, if One World loses its bid to invalidate the '319 patent at the PTO,

following a final determination in the IPR, One World will be estopped from asserting invalidity

of the '319 patent in this Court on any ground that One World either "raised or reasonably could

have raised during that inter partes review."  35 U.S.C. § 315(e)(2).  In fact, One World makes

similar invalidity arguments to this Court that it raised in its IPR petition before the PTO, its

Petition for a Modification Proceeding at the ITC, and its Emergency Motion to the Federal

Circuit.  *Compare* Compl. ¶¶ 25-31 (alleging that "the '319 patent would be invalid in view of a

key prior art reference, U.K. Patent Application GB231250[3] to Doppelt ('*Doppelt*')"), with

IPR2017-00126, Paper 1 at 3 ("Petitioner [One World] asks the [PTO] Board to find claims 1-4,

7, 8, 9-12, 15, and 16 [of the '319 patent] unpatentable under § 103 as obvious over *Doppelt* in

view of the *Admitted Art* and *Jacobs* and/or *Gilbert*."), ITC Inv. No. 337-TA-1016, *Supplement

to Respondents' Petition for a Modification Proceeding* at 2-3 ("U.K. Patent Application

GB231250 to Doppelt ('*Doppelt*') would anticipate multiple asserted claims, including all

independent claims of the '319 patent."), *and Chamberlain Grp., Inc. v. Int'l Trade Comm'n*,

Appeal No. 18-2002 (Fed. Cir.), ECF no. 30 at 3 ("[U]nder Chamberlain's new infringement

theory, Doppelt anticipates the asserted claims.").

---

[3]  One World's reference in its Complaint and TRO Memorandum to *Doppelt* as "U.K.
Patent Application GB231250" appears to be an error.  *See* Pl. Exh. N (U.K. Patent Application
GB2312540).

Therefore, the IPR estoppel provision will streamline this case in the event that the PTO

finds the '319 patent is valid, because One World will be estopped from pursuing invalidity

arguments before this Court, including both arguments that One World raised before the PTO as

well as those it "reasonably could have raised during that inter partes review."  35 U.S.C.

§ 315(e)(2).

With respect to infringement, One World's infringement of the '319 patent is currently

being litigated in the N.D. Ill. Action, a case which One World asked be stayed.  One World is

also appealing questions of patent infringement and validity to the Federal Circuit in the context

of its appeal of the ITC's exclusion order in Inv. Nos. 337-TA-1016.  *Chamberlain Grp., Inc. v.*

*Int'l Trade Comm'n*, Appeal No. 18-2002 (Fed. Cir.), ECF no. 18 and no. 30 (One World's

*Emergency Motion To Partially Stay Remedial Orders*).  Disposition of the Federal Circuit

appeal will aid this Court in determining whether the exclusion order applies to the Redesigned

GDOs, and the Federal Circuit's ruling on claim construction issues would be controlling here.

Indeed, a decision by this Court *not* to stay the case would dramatically increase the

danger of inconsistent outcomes with respect to the issue of infringement.  In *Corning Gilbert*

*Inc. v. United States*, 896 F. Supp. 2d 1281 (Ct. Int'l Trade 2013), this Court found that the

accused merchandise did not infringe the applicable patent that was the subject of an ITC

exclusion order, and ordered Customs to admit the excluded merchandise.  *See* ITC Inv.

No. 337-TA-650.  But in the related district court litigation concerning the same patent and the

same merchandise, which was pending at the time this Court made its non-infringement decision,

a jury reached the opposite conclusion.  *PPC Broadband, Inc. v. Corning Optical Commc'ns RF,*

*LLC*, 193 F. Supp. 3d 133 (N.D.N.Y. 2016).  "Following a three-day trial in July 2015, … a jury

found that Corning [Gilbert] willfully infringed" the patent at issue in the U.S. Court of

18

International Trade case, and awarded the patent holder $23.85 million, a decision that was later affirmed by the Federal Circuit.  *Id.* at 137; 714 Fed. Appx. 1022 (Fed. Cir. 2018) (2018 WL 1285539).  The *Corning Gilbert* case cautions that this Court should refrain from making patent infringement determinations when those issues are already pending in other forums with primary subject matter jurisdiction.  By contrast, staying the case virtually eliminates this possibility while conserving judicial resources.  For all these reasons, a stay will streamline the issues remaining for trial, and therefore this factor weighs strongly in favor of a stay.

### 3.  A Stay Will Not Cause Undue Prejudice to Either Party

Neither One World nor the Government will suffer any undue prejudice as a result of a stay pending resolution of the underlying patent validity and infringement questions that are presently before the ITC, the PTO, and the Federal Circuit.

Any harm One World is currently suffering due to the inadmissibility of its Redesigned GDOs is a direct result of the choices made by One World.  After the ITC hearing in July 2017, One World chose to redesign the very products that were the subject of the ITC's investigation, but never brought those redesigned products to the ITC's attention prior to the issuance of the ITC's final determination.  Thus, One World knowingly denied the ITC the opportunity to resolve the question of whether the Redesigned GDOs infringe Chamberlain's '319 patent before seeking to import them.

In sum, a stay pending resolution of One World's patent infringement and validity challenges is the best way to ensure a fair and just resolution to the case, and we respectfully request that our motion to stay be granted.  Even if our motion to stay is denied, however, One World is not entitled to a temporary restraining order or preliminary injunctive relief.

19

## II.     ONE WORLD'S MOTION FOR INJUNCTIVE RELIEF SHOULD BE DENIED

### A.     <u>Legal Standard</u>

"To prevail on a motion for a preliminary injunction, the movant must demonstrate four

things: (1) that it will be immediately and irreparably injured; (2) that there is likelihood of

success on the merits; (3) that the public interest would be better served by the relief requested;

and (4) that the balance of the hardship on all the parties favors the petitioner." *Qingdao Taifa*

*Group Co., Ltd. v. United States*, 581 F.3d 1375, 1378 (Fed. Cir. 2009) (citations omitted).  The

same standard applies to motions for temporary restraining orders.  *Silfab Solar, Inc. v. United*

*States*, 296 F. Supp. 3d 1295 (Ct. Int'l Trade), *aff'd*, 892 F.3d 1340 (Fed. Cir. 2018).

In *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008), the Supreme Court

explained that a party seeking injunctive relief must establish all four of these factors.  Thus,

even where a plaintiff has shown a likelihood of success on the merits and irreparable injury, that

showing may still be "outweighed" by the balance of equities and the public interest, *Winter*, 555

U.S. at 23 - factors that "merge when the Government is the opposing party." *Nken v. Holder*,

556 U.S. 418, 435 (2009).  Indeed, this was the situation in *Winter*.  There, the lower courts

entered a preliminary injunction after holding that the plaintiffs were likely to succeed on the

merits in challenging the Navy's use of certain sonar technology in training exercises and that

they were suffering irreparable injury.  555 U.S. at 17-20, 23-24.  The Supreme Court reversed,

concluding that, even if petitioners were likely to succeed on the merits and had shown

irreparable harm, the public interest and balance of equities weighed decisively against

injunctive relief.  *See id*. at 23-31.  As the Court explained, "[a]n injunction is a matter of

equitable discretion; it does not follow from success on the merits as a matter of course." *Id*. at

32.  Apart from the merits, "the balance of equities and consideration of the public interest . . .

are pertinent in assessing the propriety of any injunctive relief." *Id*.  Applying that principle, the

Court declined to "address the lower courts' holding" because it determined that, "even if plaintiffs have shown irreparable injury from the Navy's training exercises, any such injury is outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors." *Id.* at 23-24. "A proper consideration of these factors alone," the Court held, "requires denial of the requested injunctive relief." *Id.* at 23; *accord, e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (courts are "not mechanically obligated to grant an injunction for every violation of law," and evaluating "commonplace considerations" beyond the merits is "a practice with a background of several hundred years of history" (citation omitted)).

It is well settled that preliminary injunctive relief must be utilized "sparingly" due to the extraordinary nature of such relief. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983); *Manhattan Shirt Co. v. United States*, 2 CIT 270, 272 (Ct. Int'l Trade 1981) (citations omitted); *GPX Int'l Tire Corp. v. United States*, 32 CIT 1183, 587 F. Supp. 2d 1278, 1286 (Ct. Int'l Trade 2008) ("Because an injunction is an extraordinary remedy, it must follow that the court will not disturb a well-founded administrative determination, even in the face of some irreparable harm."). Preliminary injunctive relief should only be granted upon a clear showing by the moving party that it is entitled to the relief requested. *American Inst. for Imp. Steel. Inc. v. United States*, 8 CIT 314, 317, 600 F. Supp. 204, 208 (Ct. Int'l Trade 1984) (citations omitted); *FMC Corp v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

### B.      <u>One World Has Not Established That It Is Entitled To Injunctive Relief</u>

One World is ineligible for injunctive relief because it cannot meet even one of the four required prongs. As demonstrated below, One World is unlikely to succeed on the merits and has established no irreparable harm. Moreover, the balance of equities tips in the Government's favor and an injunction is not in the public interest. As One World has not made the required

showing, is not entitled to the preliminary relief that it seeks and its request for a temporary
restraining order and preliminary injunction should be denied.

### 1.  One World Is Unlikely To Succeed On The Merits

One World advances two arguments regarding its likelihood of success on the merits.
First, One World argues that CBP failed to consider its defense challenging the validity of the
'319 patent and, as a result, urges the Court to reverse CBP's decision.  Second, One World
claims that its Redesigned GDOs are not covered by the claims of the '319 patent, and thus
should not be excluded as part of CBP's duty to enforce the ITC's exclusion order.  For the
reasons explained below, these arguments are unpersuasive.

### i.  The Court Should Not Review The Validity Of The '319 Patent Because The Patentholder Cannot Be Joined

Count II of One World's complaint "Declaratory Judgment – 28 U.S.C. § 2201" asks the
Court to issue a declaratory judgment the "'319 patent would be invalid over the prior art."
Compl. ¶ 66.  Section 2201(a) states, in relevant part, that "[a]ny such declaration shall have the
force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C.
§ 2201(a).

The district courts have original jurisdiction over patent cases.  28 U.S.C. § 1338(a)
("The district courts shall have original jurisdiction of any civil action arising under any Act of
Congress relating to patents, plant variety protection, copyrights and trademarks.").  As noted
earlier, there is a pending Northern District of Illinois action in which all questions of patent
infringement and validity could be heard (even though One World has successfully moved to
stay that action[4]) and is a forum where Chamberlain, the owner of the '319 patent, is a party to
the litigation.  Further, rather than staying that action, One World could have requested expedited

---

[4] *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 16-cv-06094 (N.D. Ill.), ECF no. 28.

treatment in order to more quickly resolve any question of patent validity and also potentially resolve any ambiguity relating to the Redesigned GDOs.  *See* Fed. R. Civ. P. 16(a)(1), 16(b)(1), and 26(f)(4).

By enactment of The Trade Act of 1974, Congress expressly authorized the ITC to consider "[a]ll legal and equitable defenses," including invalidity, which until that time could have been raised only in the courts.  19 U.S.C. § 1337(c).  A complainant before the ITC is required to prove that the imported goods "infringe a valid and enforceable United States patent."  19 U.S.C. § 1337(a)(1)(B)(i).  Because the ITC is now required to consider patent validity as part of its analysis, the ITC never issues an exclusion order on a patent that it finds to be invalid.  *See, generally, VastFame Camera, Ltd. v. Int'l Trade Comm'n*, 386 F.3d 1108 (Fed. Cir. 2004).  Thus, the ITC would not have issued the LEO without first finding the '319 patent to be valid.

In any event, One World's invalidity argument urges that the '319 patent is invalid because the *Doppelt* patent application (Pl. Exh. N) "discloses a wireless system that meets every element of independent claims 1 and 9."  Pl. Mem. at 25.  CBP expressly considered and rejected One World's argument that the '319 patent claims would be invalid over the *Doppelt* prior art reference, if those claims were construed to cover wireless control systems.  HQ H295697 at 32- 34.  Accordingly, CBP found One World's reliance on *Doppelt* unpersuasive.  *Id.*  Finally, the "U.S. Doppelt Patent which contains the same disclosure [as the Doppelt UK patent application] was considered by the ['319 patent] examiner, and that patent appears on the front page of the '319 patent."  HQ H295697 at 33.

Not only are the PTO, the district courts, and the ITC all charged with considering patent validity challenges, but the patent owner is a party to the actions brought in each of those forums. Here One World asks the Court to declare the invalidity of a patent held by a non-party.

"If a party is deemed necessary under [Fed. R. Civ. P.] Rule 19(a), but cannot be joined, then a court must consider whether that party is indispensable and dismissal appropriate under Rule 19(b)." *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1220 (Fed. Cir. 2010), citing *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998) and *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 876 n. 1 (Fed. Cir. 1991). While patent infringement and invalidity findings made by the ITC have no preclusive effect on the federal courts, serious Constitutional questions would be raised by a federal court's declaratory judgment that the '319 patent is invalid in a proceeding where the patent owner is not a party. *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 38 USPQ2d 1321 (Fed. Cir. 1996). Accordingly, because this is not the appropriate forum in which to challenge patent validity, One World is unlikely to succeed on the merits of its challenge to the validity of the '319 patent.

## ii. One World Is Unlikely To Succeed On Its Challenge To CBP's Infringement Determination

CBP has issued two thorough, deliberate, and well-reasoned rulings to One World on the issues now before the Court. In HQ H295697 (July 20, 2018), CBP's Intellectual Property Rights Branch found that One World's Redesigned GDOs (the Ryobi GD126 and GD201 garage door openers) "are subject to the limited exclusion order issued by the International Trade Commission." HQ H295697 at *1. In order to make that finding, CBP conducted a two-step patent infringement analysis. "Determining infringement requires two steps: construing the

claims and comparing the properly construed claims to the accused product." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1316 (Fed. Cir. 2015).  First, CBP construed the limitations of the asserted claims of the '319 patent.  Second, CBP compared the properly construed claims to the accused product.

"A claim term is construed according to its ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1355 (Fed. Cir. 2009), citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).  The person of ordinary skill in the art (POSITA) is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.  *See Phillips*, 415 F.3d at 1313.

To establish literal infringement, every limitation recited in a claim must be found in the accused product whereas, under the doctrine of equivalents, infringement occurs when there is equivalence between the elements of the accused product and the claimed elements of the patented invention.  *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016).  One way to establish equivalence is by showing, on an element-by-element basis, that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented invention, which is often referred to as the function-way-result test.  *See Intendis GmbH v. Glenmark Pharms., Inc.*, 822 F.3d 1355, 1360 (Fed. Cir. 2016).

Claim 1 of the '319 patent plainly states that the connection between the wall console and the motor drive unit (also called the "head unit") must be "by means of a digital data bus."  The claims of the '319 patent do not specify whether the "digital data bus" element must be a wired

or wireless communication channel.  At the ITC investigation, the parties stipulated that the term

"digital data bus" should be construed as "a conductor capable of conveying digital data."  ITC

Inv. No. 337-TA-1016, *Initial Determination* at 121 (Oct. 23, 2017) (Pl. Exh. B).  However, the

Administrative Law Judge found that the term "digital data bus" should be construed according

to "its plain and ordinary meaning which is 'a conductor or group of conductors which conveys

digital data.'"  *Id.* at 123.  Applying this construction of Claim 1 to the Ryobi GD200 garage

door opener, which has a physical wire extending without interruption from the wall console to

the motor drive unit (see figure below), the ITC found "that the '319 Accused Products,

represented by the GD200, have been shown to infringe claims 1-4, 7-12, 15, and 16 of the '319

patent."  *Id.* at 129.



HQ H295697 at 26.

  In the administrative proceedings before CBP, One World conceded that its Redesigned

GDOs similarly infringe every element of independent claim 1 of the '319 patent, except the

"connected … by means of a digital data bus" element (HQ H295697 at 24-25):

| Claim 1 Elements | One World's position |
|---|---|
| An improved garage door opener comprising | Not contested |
| a motor drive unit for opening and closing a garage door | Not contested |
| said motor drive unit having a microcontroller | Not contested |
| and a wall console | Not contested |
| said wall console having a microcontroller | Not contested |
| said microcontroller of said motor drive unit being **connected** to the microcontroller of the wall console **by means of a digital data bus.** | One World argues that "[t]he head unit and wall console of the redesigned GDOs communicate *wirelessly* and therefore cannot infringe."  Pl. Mem. at 1. |

Accordingly, if this action proceeds, the only question of infringement that this Court

would need to consider is whether the Redesigned GDOs infringe the "connected … by means of

a digital data bus" element of Claim 1 of the '319 patent.  If the Court applies the ITC's

construction of the disputed claim element, the question becomes whether the wall console and

motor drive unit of the Redesigned GDO's are connected by means of "a conductor or group of

conductors capable of conveying digital data."  If the answer to that question is affirmative, the

Redesigned GDOs infringe the '319 patent and are therefore subject to the ITC's exclusion

order.

One World now argues that a "digital data bus" must comprise a physical wire extending

from the wall console to the motor drive unit without interruption.  Pl. Mem. at 7-8 (arguing that

"the '319 patent does not cover wireless transmissions between the controllers and is limited to a

wired connection between the controllers.").  One World, however, "did not advance that

specific claim construction or its application before the [Administrative Law Judge] or the

Commission during the [ITC] investigation," despite the fact that its Redesigned GDOs were

under development since July 2017.  Def. Exh. 7 at 14.  Even One World concedes that in the

Redesigned GDOs, the motor drive unit is unchanged from the infringing GDOs (HQ H295697

at 26), and that only the wall console (B) has been modified to transmit data wirelessly to a

receiver (A), as shown in Fig. 4 below:



Fig. 4

A - Receiver (récepteur, receptor)
B - Indoor keypad (clavier intérieur, panel interno)
C - Receiver button (bouton du receveur, botón del receptor)
D - Green LED (DEL vert, luz LED verde)
E - Up/down button (bouton vers le haut/vers le bas, botón arriba/abajo)
F - Light button (bouton de lumière, botón de luz)
G - Lock button (bouton de verrouillage, botón del seguro)
H - Number 5 (no 5, número 5)
I - Magnet (almant, imán)

*Id.* at 13.

Fig. 3 shows that the receiver (A) is connected by means of physical wires (B) to the

keypad wire terminals (C) on the unchanged motor drive unit:



Fig. 3

A - Receiver (récepteur, receptor)
B - Wires (fils, cables)
C - Keypad terminals (terminals de clavier, terminals del panel)
D - Metal surface (surface métallique, superficie metálica)

*Id.* at 27.

28

CBP's comprehensive ruling explains that:

> During the oral argument before the IPR Branch, [One World] conceded that the pair of wires connecting the wire terminal labeled "Keypad" on the [motor drive] unit to the wireless receiver is a digital data bus that connects the wireless receiver to the controller in the [motor drive] unit.  See Oral Arg. Tr. at 36:9–37:7, 38:6–10, 40:7–15.  Indeed, given that: (i) the [motor drive] unit of the GDOs at issue remains unchanged from the '319 Accused Products, and (ii) a pair of wires connects the [motor drive] unit of the GDOs at issue to the wireless receiver in the same manner as a pair of wires connected the [motor drive] unit to the wired, wall-mounted keypad of the GDOs before the ITC, it follows that the microcontroller (or controller) of the motor drive unit of the GDOs at issue is connected to wireless receiver by means of a digital data bus (i.e., a conductor or group of conductors which conveys digital data).
>
> [One World] also conceded that that the wireless receiver's antenna, itself is "a conductor that conveys digital signals."  See id. at 46:20–47:15.  [One World] further conceded that the microcontroller in the wall console (wireless, wall-mounted keypad) is connected to and conveys digital data to the wireless receiver via wireless communication of the wireless, wall-mounted keypad.  See id. at 53:12–54:10.

HQ H295697 at 27-28.

CBP found that because physical wires (B) connect the receiver (A) to the wire terminals (C) labeled "Keypad" on the motor drive unit (fig. 3, supra), and the receiver in turn connects to the wall console by means of a wireless data connection (fig. 4, supra), that by One World's own admission operates by way of a conductor (the antenna) that conveys digital signals (HQ H300129 at 35), the Redesigned GDOs meet the element of Claim 1 of the '319 patent that requires the motor drive unit to be connected to the wall console "by means of a conductor or group of conductors which conveys digital data."  HQ H295697 at 29-30.  CBP explained that,

> [w]ith respect to the first step, we follow the ITC's construction of the phrase "digital data bus" as "a conductor or group of conductors which conveys digital data" and note [] that . . . Claims 1 and 9 of the '319 patent therefore require[] that the microcontroller (or controller) of the motor drive unit be connected to the microcontroller (or controller) of the wall console by means of a conductor or group of conductors which conveys digital data.  With respect to the second step, we have compared this properly construed claim limitation to the GDOs at issue, and concluded that the combination of the pair of wires connecting the wire terminal labeled "Keypad" on the [motor drive] unit to the wireless receiver, the

wireless receiver, and the wireless, wall-mounted keypad are a group of conductors which connects and conveys digital data between the microcontroller in the wireless, wall-mounted keypad, and the microcontroller in the head unit.

*Id.* at 29.

Accordingly, CBP determined that the Redesigned GDOs are covered by the ITC's exclusion order. Based on this well-reasoned decision, One World is unlikely to succeed on the merits here. One World's representation to this Court, the ITC, and the Federal Circuit, that its Redesigned GDOs do not infringe Chamberlain's '319 patent should not be taken at face value, particularly since One World previously represented to the district court and the ITC that its Original GDOs were non-infringing but both forums found just the opposite.

### 2. One World Has Not Established That It Will Suffer Irreparable Harm Absent Injunctive Relief

In addition to failing to establish likelihood of success on the merits, One World has likewise failed to show that it will be irreparably harmed absent preliminary injunctive relief. It is well established that in order to obtain injunctive relief, a plaintiff must establish a viable threat of imminent irreparable harm.

The irreparable harm inquiry seeks to identify harms that no damages, however great, could address. *See Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1010 (Fed. Cir. 2009). "Harm is only irreparable when there is no adequate remedy at law" and when "no damages payment, however great, can address it." *Int'l Fresh Trade Corp. v. United States*, 26 F. Supp. 3d 1363, 1367 (Ct. Int'l Trade 2014), citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) and *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). "[T]he threat of irreparable harm must be immediate and viable - '[a] preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great.'" *Id.*, quoting *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir.

1983) (quotation marks and citation omitted).  "'Plaintiff bears an extremely heavy burden' to establish irreparable harm." *Id*., quoting *Shandong Huarong Gen. Grp. Corp. v. United States*, 24 CIT 1279, 1282, 122 F. Supp. 2d 1367, 1369 (Ct. Int'l. Trade 2000) (citation omitted).

Importantly, One World brings this action under 28 U.S.C. § 1581(a) and the denied protest that is being challenged relates to a single entry covering 936 units of the Ryobi GD126 Redesigned GDO.  See Pl. Exh. P.  Therefore, the scope of any temporary restraining order or preliminary injunction in this § 1581(a) action would be limited to this one entry of Ryobi GD126 Redesigned GDOs.  *See Corning Gilbert*, 896 F. Supp. 2d at 1297 n.4 (noting that, "[t]o the extent that Plaintiff seeks prospective permanent injunctive relief … regarding entries that are not subject to the protest that is covered by this action, such request is beyond the scope of this action and the court's jurisdiction under 28 U.S.C. § 1581(a).").

One World contends that "absent immediate injunction relief, [it] will suffer immediate and irreparable harm in the form of loss of good will, damage to reputation, and loss of business opportunities."  Pl. Mem at 30.  Purporting to provide the requisite support for One World's motion for injunctive relief is the Declaration of Michael Farrah (Sept. 10, 2018), Pl. Exh. Q at ¶¶ 8-10.  Strikingly, the Farrah declaration lays blame for the alleged harms not on any CBP decision, but rather on the decisions of the ITC through its Remedial Orders.  *Id*.  Not once in the Farrah Declaration does Mr. Farrah mention CBP or any decision by CBP affecting One World. *Id*.  Given that this action challenges a specific decision by CBP, not a decision by the ITC, One World's motion provides no support for the notion that it will suffer any harm, let alone irreparable harm, if the implementation of CBP's decision is not enjoined.  One World's claim of irreparable harm is further undermined by the fact that both of the Redesigned GDOs, the Ryobi

GD126 and the Ryobi GD201, are currently offered for sale at Home Depot's website.  Def.

Exhs. 3 and 4.

Even if One World was not currently selling its Redesigned GDO, it is simply not logical

that a seller of over 167 different power tools[5] with annual sales of 1.5 Billion, [6] [■]% of which

are derived through its business with Home Depot, could be irreparably harmed by the exclusion

of one entry of 936 Redesigned GDO units with a total value of approximately [███████] [7].  Pl.

Notice Of Submission Of Information And Documents (ECF no. 16 at 1).  It is also not

reasonable to conclude that by excluding this one entry, the value of which represents less than

[███] percent of the annual sales that One World derives from Home Depot, Customs irreparably

harmed One World's reputation, credibility and trust with Home Depot.  Pl. Mem. 30.  For One

World to suffer this alleged harm, Home Depot would have to give no weight to its long-

standing relationship with One World or the profits it has enjoyed from its dealings with One

World regarding the other 166 Ryobi products that Home Depot sells.  Indeed, the fallacy of One

World's claim of harm is shown by the fact that One World was preliminarily enjoined by the

U.S. District Court for the Northern District of Illinois from selling its Original GDOs between

September 2016 and January 2017, and yet it still does business with Home Depot.[8]

---

[5] Ryobi's website shows that its product offerings for 2018 include over 125 "one +" 18 Volt
System power tools, 23 corded power tools and 19 outdoor tools of the 40 Volt variety.  *See*
https://www.ryobitools.com.
[6] The Dun and Bradstreet report covering One World shows that it has annual sales totaling
$1,500,000,000.00.  *See* Def. Exh. 5 (D&B Duns Private Company Insight).
[7] There is a discrepancy between the value of the merchandise that One World represents to
this Court (ECF no. 16 at 1) and the actual entered value of [███████] that One World
represented to CBP in its entry papers.  Def. Exh. 6 (One World Entry Summary).
[8] The Chamberlain Group brought a patent infringement lawsuit against Techtronic
Industries Co. Ltd, in the Northern District of Illinois regarding the Ryobi GD200 garage door
opener.  *See Chamberlain Group, Inc. v. Techtronic Indus., Co. Ltd.* 676 Fed. Appx. 980 (N.D.
Ill. 2017).  In September of 2016, the court granted a preliminary injunction against TTI's sales

Further, any loss of reputation, good will or business opportunity arising from its contract with Home Depot involving the Redesigned GDOs would be self-inflicted – or at least foreseeable.  In the One World/Home Depot contract for the GDOs One World [███████████ ████████████████████████████████████████ ]  *See* Pl. Notice Of Submission Of Information And Documents, Exh. 1 (ECF no. 16-2 at 12, ¶  5.2).  While One World has petitioned the ITC for a modification proceeding with the goal of excluding its Redesigned GDOs from the scope of the LEO, the ITC review is not yet complete, and CBP has determined that the Redesigned GDOs fall within the scope of LEO.  Thus, it was, at best, premature for One World to have warranted that its Redesigned GDOs do not [█████████ ████████████████████ ]  One World's contract with Home Depot states that [████████████████████████████████████████████ ████████████████████████████ ].  Pl. Notice Of Submission Of Information And Documents, Exh. 1 (ECF no. 16-2 at 12, ¶ 8.3).  By prematurely warranting the [████████████████████████████████ ] with regard to the Redesigned GDOs, One World has only itself to blame for any loss of reputation, good will, or business opportunities.

Lastly, it is strange at best that One World waited to alert the ITC to its redesigned GDO product until long after the ITC issued the LEO.  One World even met with CBP's IPR branch regarding its redesigned GD126 product on February 14, 2018 (HQ H300129 at 22), more than a month before the ITC issued its LEO on March 23, 2018.  ITC Inv. No. 337-TA-1016, *Limited Exclusion Order* (Pl. Exh. O at 34-37).  Based on these facts, One World could have notified the

---

of the GD200, but that preliminary injunction was vacated by the Federal Circuit in January of 2017.  *Id.* at 988.

ITC of its Redesigned GDOs and possibly had the ITC review the design-around at issue here

prior to the ITC's issuance of its LEO.  Instead, One World "chose to delay bringing these

redesigned products to the Commission's attention until August 2018."  Def. Exh. 7 at 20.

By failing to have the ITC review its Redesigned GDOs prior to the issuance of the LEO,

One World is itself responsible for any harm it may suffer as a result of CBP's decision to

exclude the entry at issue.  *See United States v. Sweet Little Mexico Corp.*, 2012 WL 91225,

Court Nos. 10-00372, 09-00236 (Ct. Int'l Trade Jan. 12, 2012) (in denying injunction, court

found that "[applicant] does not, at least at this stage, persuade that its predicament with

[defendant] is not one of its own making.").  For these reasons, One World has not established

that it will suffer irreparable injury unless the Court enters a temporary restraining order or a

preliminary injunction.

### 3.  <u>The Balance Of Hardships Precludes An Injunction</u>

In contrast to the lack of immediate irreparable harm that One World alleges it would

suffer absent injunctive relief, the Government's administration of the customs laws would be

significantly harmed by short-circuiting the regulatory process for administration and

enforcement of the ITC's exclusion orders.  19 C.F.R. §§ 210.75, 210.76, 210.77, 210.79.

Indeed, Congress entrusted the ITC with the authority to determine the need for and the scope of

exclusion orders in the first instance and, under the regulations above, the ITC is a correct forum

for determining whether One World's Redesigned GDOs should be excepted from the LEO.

Section 337 states that the remedial orders should remain in place until the Commission rules on

these redesigns in a modification or other proceeding, 19 U.S.C. § 1337(k), and One World is

currently seeking this remedy at the ITC in the appropriate context of a modification proceeding.

The ITC has agreed to review that issue, and is expected to have a decision by March 2019.

Further, despite the fact that One World acknowledges that it developed the Redesigned

GDOs after the ITC hearing in July 2017, it failed to bring those products to the ITC's attention

until August 2018, after the ITC had issued its final determination and exclusion order.  One

World should not now be rewarded for its lack of diligence by the grant of a temporary

restraining order or preliminary injunction that impedes CBP's fair administration of that

exclusion order.

Finally, we note that the patentholder, Chamberlain, not only sells garage door openers,

but sells them through Home Depot, the same channel through which One World intends to sell

the excluded Redesigned GDOs, if the Court overturns CBP's decision.  *See* Def. Exh. 1 (GDOs

for sale at Home Depot).  In considering whether to grant the requested injunctive relief, it would

be appropriate for the Court to consider any potential hardship that would be suffered by

Chamberlain not only in terms of lost exclusivity rights that patentholder's enjoy, but also in

terms of potential lost sales and lost brand loyalty.  The ITC believes that "Chamberlain will be

equally harmed by a stay of the Commission's orders."  Def. Exh. 7 at 20.

### 4.  <u>An Injunction Would Not Serve The Public Interest</u>

"More so than ever, the public has a strong interest in protecting and enforcing, when

need be, U.S. intellectual property rights."  *Eaton Corp. v. United States*, 395 F. Supp. 2d 1314,

1328 (Ct. Int'l Trade 2005).  "Surely, it is not in the public interest to permit CBP not to carry

out the precise mandate of the U.S. International Trade Commission."  *Id.*  "[T]he public is best

served by enforcing patents that are likely valid and infringed." *Abbott Labs. v. Andrx*

*Pharmaceuticals, Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).  It has been long recognized that

"public interest" is the policy underlying specific legislation.  *Yakus v. United States*, 321 U.S.

414 (1944).

One World's attempt to bypass the ITC's modification proceeding, which it specifically requested, will harm the administration of the customs laws. Rather than following the process set forth in the ITC's regulations, One World seeks an extraordinary remedy of a temporary restraining order and preliminary injunction under the belief that its Redesigned GDOs do not infringe the '319 patent, without waiting for the agency entrusted by Congress to determine in the first instance whether its contentions are meritorious.

In light of the administrative remedies that One World has elected, "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952). That is the case here because the ITC will issue a decision on One World's Redesigned GDOs, thus resolving its complaints without burdening this Court.

In this case, One World cannot meet its burden of establishing that the public interest will be served by the issuance of the requested temporary restraining order and preliminary injunction because, as demonstrated above, CBP properly implemented the ITC's exclusion order. Moreover, issuance of an injunction would encourage parties who are dissatisfied with the practical effect of an exclusion order to bypass the appropriate avenue for seeking a clarification or modification from the ITC. Clearly, such an outcome is against the public interest.

Moreover, preliminary injunctions are generally granted to preserve the *status quo* pending final determination of the controversy. *Nat'l Hand Tool Corp. v. United States*, 14 CIT 61, 66 (1990). When grant of a motion for a temporary restraining order or preliminary injunction gives a plaintiff all of the relief which would be obtained as a result of a final

adjudication of the controversy, the motion ordinarily should be denied.  *Id.* at 67.  Here, the relief plaintiff seeks through its application for injunctive relief and the ultimate relief are essentially the same.  As a result, One World also fails to satisfy the "public interest" criteria necessary for a temporary restraining order or preliminary injunction.

In sum, because One World has not established the existence of any one, let alone all of the factors necessary for injunctive relief, its motion should be denied.

## CONCLUSION

For these reasons, the Government respectfully requests that the Court stay the case pending resolution of One World's parallel proceedings before the ITC, the Federal Circuit, and the PTO.  The Government further requests that the Court deny One World's Motion for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

By:      /s/ Amy M. Rubin
AMY M. RUBIN
Assistant Director

Of counsel:                              /s/ Guy Eddon
Michael W. Heydrich                 GUY EDDON
Office of Chief Counsel             EDWARD F. KENNY
International Trade Litigation      Trial Attorneys
U.S. Customs and Border Protection   Civil Division, Dept. of Justice
                                               Commercial Litigation Branch
                                               International Trade Field Office
                                               26 Federal Plaza, Suite 346
                                               New York, New York 10278
                                               Tel. No. 212-264-9230 or 9232
                                               Attorneys for Defendant

September 21, 2018

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: JENNIFER CHOE-GROVES, JUDGE

———————————————————————
                                                :
ONE WORLD TECHNOLOGIES, INC.,                   :
                                                :
                            Plaintiff,          :          Court No. 18-00200
                                                :
                    v.                          :
                                                :
UNITED STATES, UNITED STATES                    :
DEPARTMENT OF HOMELAND SECURITY,                :
UNITED STATES CUSTOMS AND BORDER                :
PROTECTION, and COMMISSIONER KEVIN K.           :
MCALEENAN,                                      :
                                                :
                            Defendants.         :
———————————————————————:

## CERTIFICATE OF COMPLIANCE

I, Guy Eddon, a Trial Attorney in the Office of the Assistant Attorney General, Civil

Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for

the Government's Memorandum In Opposition to Plaintiff's Motion For Temporary Restraining

Order And Preliminary Injunction And In Support Of Defendant's Motion To Stay, relying upon

the word count feature of the word processing program used to prepare the opposition, certify

that this brief complies with the word count limitation under the Court's chambers procedures,

and contains 11,454 words.


                                        /s/ Guy Eddon