**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ONE WORLD TECHNOLOGIES, INC., <br><br>                          Plaintiff,<br>           v.<br><br>THE UNITED STATES OF AMERICA; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; and KEVIN K. MCALEENAN, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>                          Defendants. | Case No.: 18-cv-200<br><br>**JURY TRIAL DEMANDED**<br><br>Judge Jennifer Choe-Groves |

**AMENDED COMPLAINT**

Plaintiff One World Technologies, Inc. d/b/a Techtronic Industries Power Equipment ("Plaintiff" or "One World"), by its attorneys, Morgan Lewis & Bockius LLP, complains against the United States of America, U.S. Department of Homeland Security, U.S. Customs and Border Protection, and Kevin K. McAleenan, in his official capacity as Commissioner of Customs, and alleges as follows:

**NATURE OF THE ACTION**

1.      This action seeks reversal of the denial by U.S. Customs and Border Protection ("CBP") of a protest filed by One World against CBP's exclusion, formally and/or by operation of law, of certain redesigned Ryobi® Ultra-Quiet Garage Door Opener Model Nos. GD126 and GD201 ("Redesigned GDOs") sought to be entered into the U.S. by One World.  CBP excluded these products on the ground that their entry is purportedly barred by a Limited Exclusion Order (the "LEO") issued by the U.S. International Trade Commission ("Commission" or "ITC") in Commission Investigation No. 337-TA-1016, which excluded certain access control systems and components thereof covered by one or more of claims 1-4, 7-12, 15, and 16 of U.S. Patent No. 7,161,319 (the "'319 patent," attached hereto as Exhibit A).  This action also seeks an order

enjoining CBP from improperly denying admission of the Redesigned GDOs entry into the U.S., as well as a declaration that the Redesigned GDOs do not infringe claims 1-4, 7-12, 15, and 16 of the '319 patent, and/or that those claims are invalid to the extent they are construed to cover the Redesigned GDOs.

## JURISDICTION

2. This case is a civil action commenced to contest CBT's administrative ruling issued pursuant to 19 C.F.R. § 177 (HQ H295697), as well as CBT's exclusion of goods from entry into the U.S. and its denial of One World's Protest of that exclusion that was filed pursuant to 19 U.S.C. § 1514 (HQ H300129).

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1581(a) & (h).

## STATEMENT OF FACTS

### A. Parties

4. Plaintiff One World is a Delaware corporation with its principal place of business at 1428 Pearman Dairy Road, Anderson, South Carolina 29625.

5. One World designs, markets, and sells power tools and outdoor products under the Ryobi® brand, including the garage door openers and related accessories at issue in this case.

6. One World filed the denied protest contesting CBP's exclusion of the merchandise in question. Thus, One World is the real party in interest and has standing to bring this action.

7. Defendants are responsible for determining the admissibility of goods sought to be entered into the U.S., for making determinations regarding their exclusion, and for deciding protests. They are thus the proper party defendants here.

  **B.**  <u>The ITC Complaint & Asserted Patent Initial Determination & Commission Order</u>

  8.  On July 5, 2016, the Chamberlain Group, Inc. ("Chamberlain") filed a complaint with the Commission, alleging the GDOs manufactured and/or imported by six respondents (including One World) infringed several U.S. patents, including the '319 patent. *See Certain Access Control Systems and Components Thereof,* Inv. No. 337-TA-1016.

  9.  The '319 patent claims an operator for moving a barrier, namely a garage door opener. Exhibit A, '319 patent at col. 1, ll. 14 to 20. The embodiment of the invention illustrated in Figure 1 (annotated below) shows a wall control unit 60 connected to the head unit 24 via a wired digital data bus line 62 (highlighted in red). *Id.* at col. 3, ll. 42 to 52).



  10.  The two independent claims in the '319 patent, claims 1 and 9, both plainly state that the controller in the wall console and the controller in the head unit must be "connected . . . by means of a digital data bus." *See id.*, claim 1 ("microcontroller of said motor drive unit being connected to the microcontroller of the wall console by means of a digital data bus") & claim 9

("controller of said motor drive unit being connected to the controller of the wall console by means of a digital data bus")).  A chart comparing the elements of claims 1 and 9 of the '319 patent to Figures 1, 2, 4, and 5 of the '319 patent is attached as Exhibit C.

### C. The Original Ryobi GDOs

11.   The original Ryobi® Ultra-Quiet Garage Door Opener, Model No. GD200 ("Ryobi GD200"), included a head unit with a Wire Terminal labeled "Keypad" (outlined in red below) for receiving a wire that extended from a separate wall-mounted keypad.



12.   As can be seen below, the original Ryobi GD200 included a wall-mounted keypad with a pair of wires that extended from the keypad, ran along the wall and garage ceiling to the location of the head unit, and connected into head unit via the Wire Terminal labeled "Keypad."



Fig. 59   Fig. 61   Fig. 60

**D.     The Initial Determination & Commission Order**

13.     On August 9, 2015, the Commission instituted the 1016 Investigation, naming as respondents Techtronic Industries Co., Ltd., Techtronic Industries North America, Inc., One World Technologies, Inc., OWT Industries, Inc., Ryobi Technologies, Inc.,[1] and ET Technology (Wuxi) Co., Ltd. (collectively, "Respondents").  *Fed. Reg.* 52713 (Aug. 9, 2016).

14.     On October 23, 2017, the presiding Administrative Law Judge ("ALJ") issued his Initial Determination ("ID") finding that the original Ryobi GD200 infringed claims 1-4, 7-12, 15, and 16 of the '319 patent.  The ALJ also recommended that the Commission issue a LEO prohibiting the importation of the accused products that were found to infringe the asserted claims of the '319 patent, as well Cease-and-Desist Orders ("CDOs") against Techtronic Industries Co., Ltd., Techtronic Industries North America, Inc., One World, and OWT Industries, Inc., but not ET Door.  A copy of the public version of the ID is attached hereto as Exhibit B.

15.      On December 22, 2017, the Commission determined to review the ID in part, and requested that the parties brief whether a combination of prior art references rendered the '319 patent invalid.  The Commission did not review infringement or claim construction with respect to the '319 patent.

---

[1] Ryobi Technologies, Inc. was terminated as a Respondent from the Investigation on November 7, 2016.

16. On March 23, 2018, the Commission issued its Final Determination ("FD") affirming the ID. *See* Exhibit D (Notice of Final Determination).

17. The Commission issued a LEO as to all Respondents, and CDOs as to all Respondents except ET Door (collectively, the "Remedial Orders") barring importation into the U.S. of the accused GDOs, sale for importation of the accused GDOs into the U.S., or sale of the accused GDOs after importation into the U.S. Copies of the Remedial Orders are attached hereto as Exhibit O.

18. With respect to the '319 patent, Respondents requested the Commission to include a certification provision because, as Respondents explained, such a provision would "assist Customs in efficiently identifying redesigned products not subject to any limited exclusion order." The Commission granted Respondents' request to include a certification provision in the LEO. *Id*. at 34-35. The Presidential review period expired on or about May 28, 2018.

### E. The Federal Circuit

19. On July 23, 2018, the Respondents in the ITC case filed a Petition for Review of the Commission's FD at the U.S. Court of Appeals for the Federal Circuit. That appeal is styled *Techtronic Industries Co. Ltd. v. International Trade Comm'n* (Case No. 18-2191) and was consolidated with *The Chamberlain Group, Inc. v. International Trade Comm'n* (Case No. 18-2002).

### F. The *Inter Partes* Review Proceedings Before the Patent Office

20. On October 25, 2016, One World and Techtronic Industries North America, Inc. filed a petition for *inter partes* review ("IPR") of the claims of the '319 patent that were asserted against the Respondents in the ITC investigation. *One World Techs., Inc. v. The Chamberlain Group, Inc.*, IPR2017-00126, Paper 1 (PTAB Oct. 25, 2016). The U.S. Patent Office's Patent Trial and Appeal Board ("PTAB") instituted review of all challenged claims on May 4, 2017, and

held oral argument on February 1, 2018. *Id.*, Papers 8 & 36. The PTAB subsequently decided to include an additional ground of unpatentability in the proceeding and held a second oral argument on August 7, 2018. *Id.*, Papers 41 & 53. The statutory deadline for the PTAB to issue a final written decision is November 4, 2018.

  **G.** **The Redesigned GDOs**

  21. At the end of the ITC proceedings, and after learning of Chamberlain's arguments as well as the ITC's construction of the relevant claim terms of the '319 patent, the ITC Respondents redesigned the accused products to implement a new hardware configuration that avoids the asserted claims of the '319 patent. Specifically, in the Redesigned GDOs, Respondents removed the wired connection between the wall console and the head unit by utilizing a wireless wall console that communicates wirelessly with a receiver at the head unit.

  22. The Redesigned GDOs now include a wireless keypad that mounts to a garage wall, as shown in Figure 2 (below).



  23. The wireless keypad wirelessly transmits signals to a separate receiver located at the head unit. The wireless keypad and receiver are shown in Figure 4 (below at left), and the wireless receiver attached to the head unit is shown in Figure 3 (below at right).

 

24. The Redesigned GDOs' wireless connection between the transmitter in the wall console and the receiver at the head unit avoids the claims of the '319 patent. In particular, the Redesigned GDOs do not include a "microcontroller [or controller] of said motor drive unit being connected to the microcontroller [or controller] of the wall console by means of a digital data bus." *See* Exhibit A, '319 Patent, claims 1 & 9.

25. To the extent the '319 patent's claims could conceivably be read to cover the wireless connection used by the Redesigned GDOs, the '319 patent would be invalid in view of a key prior art reference, U.K. Patent Application GB231250 to Doppelt ("*Doppelt*"), attached as Exhibit N.

26. Like the '319 patent, *Doppelt* discloses a "garage door opener," as can be seen in *Doppelt's* Figure 1, annotated below in blue:



27.     *Doppelt* discloses a "motor drive unit," as claimed by the '319 patent, in the form of a "[h]ead unit 12" that is "mounted to the ceiling of garage 14," which includes a motor for opening and closing the garage door. *Id.* at 5:8-10.

28.     *Doppelt* also discloses "said motor drive unit having a microcontroller [or controller]," because its "head unit has a controller 70" (*id.* at 5:29-30) (in blue below) that "includes a microcontroller 84" (*id.* at 5:34-37).

29.     *Doppelt* further disclose a "wall console—a term that was construed by the Commission to mean "a wall-mounted control unit." Exhibit B, Initial Determination, at 120 (noting Commission's construction). In particular, *Doppelt* discloses "[a]n external control pad 34 [that] is positioned on the outside of the garage." *Id.* at 5:16-18. *Doppelt's* outdoor control pad 34, also referred to as "[t]ransmitter 34," is "controlled by a programmed microcontroller." *Id.* at 10:26–27.

30.     Furthermore, if "connected . . . by means of a digital data bus" is interpreted broadly to include wireless connections, as was done by Customs, *Doppelt* also discloses that limitation because the external keypad 34 "communicate[s] via radio frequency transmission with an antenna 32 of the head unit 12." *Id.* at 5:18–20.

31. *Doppelt's* "antenna 32" includes a conductor which conveys digital data, and the antenna 32 is electrically connected to receiver 80 which is in turn connected to microcontroller 84 via line 82. *Id.* at Fig. 1, 5:29-37. Thus, *Doppelt* teaches a similar "part-wired/part-wireless" connection as used by the Redesigned GDOs.

### H. CBP's Ruling Letter HQ H295697

32. On March 30, 2018, after the FD issued, Respondents submitted a letter to the Intellectual Property Rights Branch of CBP ("IPRB") requesting a ruling that the Redesigned GDOs are not covered by the ITC's Remedial Orders. The parties engaged in extensive briefing on the redesign and the IPRB conducted a full hearing on the issue.

33. On July 20, 2018, the IPRB issued Ruling HQ H295697 (July 20, 2018) erroneously concluding that the Redesigned GDOs are subject to the Remedial Orders issued by the ITC in Commission Investigation No. 337-TA-1016. *See* Public version of the IPRB Ruling attached hereto as Exhibit E.

34. The IPRB acknowledged that "[t]he GDOs at issue replace the pair of wires and the wired, wall-mounted keypad of the [previous design] with a wireless, wall-mounted keypad and a wireless receiver." *Id*. at 26

35. Nevertheless, the IPRB adopted a broad interpretation of the claim language requiring the head unit and the wall console to be "connected . . . by means of a digital data bus," and erroneously determined that the '319 patent's claims cover the wireless design used by the Redesigned GDOs. *See id.* at 27.

36. The IPRB declined to consider whether the claims of the '319 patent would be invalid over the *Doppelt* prior art reference under the broad claim interpretation it was adopting. *See id.* at 32-33.

### I. Modification Proceeding at the ITC

37. On July 19, 2018, the Respondents in the underlying ITC proceedings filed a Petition requesting that the Commission modify the Remedial Orders to specify that the Redesigned GDOs are not covered by those orders. Respondents subsequently filed a Supplement to that Petition informing the ITC of the IPRB's decision regarding the Redesigned GDOs. Respondents subsequently filed a Second Supplement to that Petition informing the ITC of further admissions by Chamberlain's counsel in the related IPR proceedings that the '319 patent's claims do not cover wireless systems.

38. On September 4, 2018, the Commission granted Respondents Petition and instituted a Modification proceeding. *See* Order Instituting Modification Proceeding, attached hereto as Exhibit G.

39. The Commission has ordered that the Administrative Law Judge designated to preside over the modification proceeding issue a recommended determination within six months after publication of the Order's notice in the Federal Register. *Id.* at 2.

### J. CBP's Protest Ruling

40. On or about June 29, 2018, a shipment of Redesigned GDOs was excluded for consumption into the U.S. at the Port of Charleston, South Carolina by defendants. *See* correspondence attached as Exhibit H.

41. On August 10, 2018, One World filed a protest regarding the Redesigned GDOs that were denied entry into the U.S. Exhibit I.

42. On September 7, 2018, the IPRB issued Ruling HQ H300129 denying One World's Protest based on the same reasoning with respect to the '319 patent's claims as previously set forth in the Ruling HQ H295697. Exhibit F at 34-38. The CBP again declined to consider

whether the claims of the '319 patent would be invalid over the *Doppelt* prior art reference under the broad claim interpretation adopted by the IPRB. *See id.* at 38.

43. One World is timely seeking review of the wrongfully denied Protest. *See* 19 C.F.R. § 174.31.

### K. Chamberlain Has Repeatedly Insisted that the '319 Patent only covers a Wired System

44. During the ITC, Customs, and IPR proceedings, Chamberlain insisted that the claims of the '319 patent do not cover wireless communications, and only a wired connection between the controllers in wall console and the head unit would infringe the '319 patent.

#### 1. *At the ITC:*

45. In its pre- and post-hearing briefs at the ITC, Chamberlain argued that all '319 patent claims relate to wired digital communications between a garage door opener's wall console and head unit. Chamberlain also distinguished the prior art disclosing a wireless connection by arguing that wireless transmitters were irrelevant to the claim requirements, which required a wall console wired to the head unit.

46. At the evidentiary hearing, Chamberlain's expert unequivocally acknowledged that the claims of the '319 patent are limited to a wired connection:

> Q. You'll agree with me that the '319 patent does not claim a wirelessy connected wall console; correct:
> A. That's correct.
> Q. And, in fact, the '319 patent claims are limited to a wired connection between the microcontroller of the motor drive unit, correct?
> A. Yes.

Hr'g Tr. (July 13, 2017) at 1079:13-20 attached as Exhibit L.

#### 2. *Before Customs:*

47. During the hearing before the IPRB regarding One World's Ruling Request that the Redesigned GDOs are not covered by the LEO, Chamberlain's counsel argued that "the claims

do not cover a solely wireless connection" in an attempt to distinguish a prior art reference that discloses the same wireless design used in TTI's redesigned garage door openers. *See* Exhibit M (IPRB hearing transcript at 83:9-84:4).

### 3. *Before the PTAB in the IPR Proceedings*

48. During the IPR proceedings, in an effort to distinguish prior art references, Chamberlain again argued that the '319 patent claims require a wired connection between the wall-mounted control unit and the head unit and do not cover wireless communications between controllers in the wall control unit and the head unit.

49. For example, Chamberlain's expert confirmed that wireless communication was outside the scope of the claims:

> Q. So within the confines of the '319 patent, would sending signals, digital signals using radio frequency or other wireless means, be conveying digital signals over a digital data bus?
> A. In my opinion, no.

Deposition of Chamberlain's expert, Dr. Nathaniel Davis (attached as Exhibit K) at 65:3-8 (objection omitted).

50. At oral arguments, in an attempt to distinguish the prior art references, Chamberlain's counsel again argued that the '319 patent's claims requires a non-wireless, direct connection between the wall counsel and the head unit:

> Judge Horvath: If I were to take that remote controller and mount it on a wall, would that become a wall console?
>
> Mr. Monaldo: That's a good question, Your Honor. That's not an argument that Petitioner has raised in this proceeding, but **I don't think so**. It's a remote controller that has different functionality. **It's not attached to anything**.
>
> …
>
> Judge Horvath: If I were to mount it on a wall, would it have the digital data bus?
>
> Mr. Monaldo: I don't think so because **it's wirelessly transmitting and there's not necessarily a data bus that's flowing between the two components.** It's a **wireless controller that is used to send wireless signals that are different than**

**when we're talking about the wall console**. That's connected *directly* through a digital data bus to the head unit.

Aug. 7, 2018 PTAB Hr'g Tr. (attached hereto as Exhibit L) at 28:21-29:16 (emphasis added).

51. Based on its repeated admissions that only a wired connection between the wall console and the head unit would infringe the '319 patent, Chamberlain is estopped from arguing that a wireless system, such as that used by the Redesigned GDOs, infringes the '319 patent.

**COUNT I:**
**(Contesting Denial of Protests – 19 U.S.C. § 1581)**

52. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1-51 of this Complaint.

53. On or about May 12, 2018, One World exported a shipment of Redesigned GDOs from a manufacturing location and port in or near Shanghai, China.

54. On or about June 29, 2018, CBP excluded Entry No. 442-75629994, the shipment of the Redesigned GDOs, from entry into the U.S. at the Port of Charleston, South Carolina.

55. One World timely protested CBP's exclusion of its goods from entry into the United States. *See* 19 CFR § 174.31.

56. One World's protest no. 160118100231 was denied on September 7, 2018.

57. CBP's denial of One World's protest is arbitrary, capricious, and an abuse of discretion. *See* 5 U.S.C. § 706(2)(A).

58. CBP's exclusion of the Redesigned GDOs is wrongful because these products do not infringe any properly interpreted claim of the '319 patent, and are therefore outside the scope of the Remedial Orders.

59. In particular, the Redesigned GDOs do not incorporate a "microcontroller of said motor drive unit being connected to the microcontroller of the wall console by means of a digital data bus" as required by all claims of the '319 patent at issue in the Remedial Orders. Rather, the

Redesigned GDOs utilize a wireless connection between a transmitter in the wall console and a receiver at the head unit, which does not satisfy the claims' requirement of being "connected . . . by means of a digital data bus."

60. Moreover, Chamberlain has repeatedly insisted in multiple forums that the claim limitation "connected . . . by means of a digital data bus" requires a wired connection between a microcontroller in the wall console and a microcontroller in the head unit, and a wireless connection is outside the scope of the claims. Chamberlain is estopped from arguing that a wireless connection between these components infringes the '319 patent.

61. Accordingly, One World's protests against CBP's exclusion of these goods were wrongfully denied and should have been allowed in whole, and the goods should have been immediately allowed to be entered and imported into the United States. Importation of these goods does not violate the Remedial Orders against importation of certain access control systems and components thereof covered by one or more of claims 1-4, 7-12, 15, and 16 of the '319 patent.

## COUNT II:
### (Declaratory Judgment – 28 U.S.C. § 2201)

62. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1-61 of this Complaint.

63. An actual, live dispute exists between One World and the defendants regarding the propriety of One World's importation of the Redesigned GDOs at issue in this case.

64. A declaration that the Redesigned GDOs do not infringe claims 1-4, 7-12, 15, and 16 of the '319 patent and/or that claims 1-4, 7-12, 15, and 16 of the '319 patent should not be enforced under the CBT's construction because that construction would render the claims invalid over the prior art will provide One World with certainty that it can continue to import the Redesigned GDOs at issue in this case without further improper exclusion of these goods by CBP.

65.     Therefore, One World requests that the Court declare that the Redesigned GDOs do not infringe claims 1-4, 7-12, 15, and 16 of the '319 patent and are admissible into the United States, and that CBP's exclusion of the subject merchandise was wrongful and contrary to law.

66.     One World also requests that the Court declare that, under the CBT's interpretation of "connected . . . by means of a digital data bus," claims 1-4, 7-12, 15, and 16 of the '319 patent would be invalid over the prior art.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment on behalf of Plaintiff and:

(1)     Order that CBP allow One World's Protest which is the subject of this Complaint;

(2)     Declare that CBP's exclusion of the Redesigned GDOs was wrongful and contrary to law;

(3)     Declare that the excluded Redesigned GDOs do not infringe claims 1-4, 7-12, 15, and 16 of the '319 patent and are admissible into the United States;

(4)     Declare that, under the CBT's interpretation of "connected . . . by means of digital data bus," claims 1-4, 7-12, 15, and 16 of the '319 patent would be invalid;

(5)     Order CBP and any of its personnel to immediately (defined as the same business day) admit the excluded goods into the United States as being outside the scope of the Remedial Orders;

(6)     Order that CBP and any of its personnel shall release to One World for entry into the United States the goods required to be admitted by the preceding paragraph, immediately (defined as the same business day);

(7)     Enjoin CBP from excluding the Redesigned GDOs from entry into the United States pursuant to the Remedial Orders concerning the '319 patent in *Certain Access Control Systems and Components Thereof,* Inv. No. 337-TA-1016;

(8) Enjoin CBP from commencing any other penalty, liquidated damages, seizure or forfeiture proceedings against the goods based on any claimed application of the Remedial Orders or the underlying patent to the goods; and

(9) Grant such other and further relief to Plaintiff that this Court deems just and proper.

Dated: September 28, 2018                    Respectfully submitted,

By: /s/ *Jason C. White*
Jason C. White
Michael J. Abernathy
**Morgan, Lewis & Bockius LLP**
77 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

Stephen E. Ruscus
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

Of Counsel:
  Eric S. Namrow
  Susan Baker Manning
  **Morgan, Lewis & Bockius LLP**
  1111 Pennsylvania Ave, N.W.
  Washington, D.C. 20004
  Telephone: (202) 739-3000
  Facsimile: (202) 739-3001

  Nicholas A. Restauri
  **Morgan, Lewis & Bockius LLP**
  77 West Wacker Drive
  Chicago, IL 60601
  Telephone: (312) 324-1000
  Facsimile: (312) 324-1001

*Attorneys for Plaintiff One World Technologies Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, I caused the foregoing **AMENDED COMPLAINT** to be electronically filed with the Clerk of the U.S. Court of International Trade by using the CM/ECF system, which will automatically generate and serve notice of this filing to all counsel of record, including counsel for the Defendants listed below:

| | |
|---|---|
| Guy R. Eddon<br>U.S. Department of Justice<br>International Trade Field Office<br>26 Federal Plaza<br>Room 346<br>New York, NY 10278<br>(212) 264-9232<br>Fax: (212) 264-1916<br>Email: *guy.r.eddon@usdoj.gov* | Amy Michelle Rubin<br>U.S. Department of Justice<br>International Trade Field Office<br>26 Federal Plaza<br>Room 346<br>New York, NY 10278<br>(212) 264-9237<br>Fax: (212) 264-1916<br>Email: *amy.rubin@usdoj.gov* |

Edward Francis Kenny
U.S. Department of Justice
Commercial Litigation Branch - Civil Div.
26 Federal Plaza
Room 346
New York, NY 10278
(212) 264-0480
Fax: (212) 264-1916
Email: *edward.kenny@usdoj.gov*

/s/   *Elsa Doi*
**Paralegal**
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601