Slip Op. 18-173

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **ONE WORLD TECHNOLOGIES, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Before: Jennifer Choe-Groves, Judge** |
| **UNITED STATES, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CUSTOMS AND BORDER PROTECTION, and ACTING COMMISSIONER KEVIN K. MCALEENAN,** | **Court No. 18-00200** |
| | **PUBLIC VERSION** |
| **Defendants.** | |

### OPINION

[Granting Defendants' partial motion to dismiss and motion to strike jury demand; Denying the motions to intervene filed by the International Trade Commission and The Chamberlain Group, Inc.; Granting a preliminary injunction in favor of Plaintiff.]

Dated: December 14, 2018

Stephen E. Ruscus, Jason C. White, and Michael J. Abernathy, Morgan, Lewis & Bockius, LLP, of Washington, D.C. and Chicago, IL, argued for Plaintiff One World Technologies, Inc.

Guy R. Eddon and Edward F. Kenny, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendants United States, U.S. Department of Homeland Security, U.S. Customs and Border Protection, and Acting Commissioner Kevin K. McAleenan.  With them on the brief were Joseph H. Hunt, Assistant Attorney General, and Amy M. Rubin, Assistant Director.  Of counsel were Michael Heydrich and Christopher Bullard, Office of Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Choe-Groves, Judge:  This action concerns garage door openers that were redesigned to

avoid infringing a registered patent.  Plaintiff One World Technologies, Inc. ("Plaintiff" or "One

World") commenced this action to obtain judicial review of a decision by U.S. Customs and

Border Protection ("Customs") excluding an entry of One World's Ryobi Ultra-Quiet Garage

Door Opener, Model No. GD126 ("Redesigned GDO"),[1] pursuant to a Limited Exclusion Order

issued by the International Trade Commission ("Commission" or "ITC").  Plaintiff asserts that

Customs denied its protest regarding the entry of the Redesigned GDO based on a flawed

interpretation of the registered patent and that its product is not included in the scope of the

Limited Exclusion Order.

Before the court are multiple motions filed by the Parties, including Plaintiff's motion for

temporary restraining order and preliminary injunction, ECF No. 5, a partial motion to dismiss

and motion to strike demand for jury trial filed by Defendants United States, U.S. Department of

Homeland Security, Customs, and Acting Commissioner Kevin K. McAleenan (collectively,

"Defendants" or "Government"), ECF No. 39, and motions to intervene filed by the ITC and The

Chamberlain Group, Inc. ("Chamberlain"), ECF Nos. 43 and 47.  For the reasons explained

below, the court grants Defendants' partial motion to dismiss with respect to Plaintiff's claim

under 28 U.S.C. § 1581(h) and issues a preliminary injunction with respect to Plaintiff's claim

under 28 U.S.C. § 1581(a).  The motions to intervene are denied.  Defendants' motion to strike

Plaintiff's demand for a jury trial is granted.

## BACKGROUND

One World is a company that designs, markets, and sells power tools and outdoor

products under, *inter alia*, the Ryobi brand.  Ryobi products are sold exclusively at The Home

Depot.

---

[1] In prior administrative proceedings, One World referred to Model Nos. GD126 and GD201 as
the "Redesigned GDOs."  Entry No. 442-75629994 contained only units of Model No. GD126
and is therefore the only merchandise properly before the court.

The ITC initiated Investigation 337-TA-1016 ("ITC's 1016 Investigation") on August 9,

2016 pursuant to a complaint filed by Chamberlain.  See Certain Access Control Systems and

Components Thereof, 81 Fed. Reg. 52,713, 52,713 (Int'l Trade Comm'n Aug. 9, 2016)

(institution of investigation by Commission of Section 337 violations).  Chamberlain alleged that

several companies sold products that infringed Chamberlain's patents, including U.S. Patent No.

7,161,319 ("'319 Patent").  See id.  The '319 Patent includes the following illustration:



Compl. Ex. A, at 4, Sept. 13, 2018, ECF No. 4-1 ("'319 Patent").  The motor drive unit, which

opens and closes the garage door, contains a microcontroller (or controller) that is connected to

the wall console "by means of a digital data bus."  Id. at 23.

One World's Ryobi Ultra-Quiet Garage Door Opener, Models Nos. GD125, GD200, and

GD200A (collectively, the "Original GDOs"), were part of the ITC's 1016 Investigation.  See

Compl. Ex. B, at 8, Sept. 13, 2018, ECF No. 4-2.  The Original GDOs contain a wire that

extends from the wall console to the head unit:



Mem. P. & A. Supp. Pl. One World Technologies, Inc.'s Mot. TRO & Prelim. Inj. 18, Sept. 13,

2018, ECF No. 6 ("Pl.'s Mem.").

The Commission issued a final determination on March 23, 2018, in which it found a

violation of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 (2012).  See

Certain Access Control Systems and Components Thereof, 83 Fed. Reg. 13,517, 13,517 (Int'l

Trade Comm'n Mar. 29, 2018) (notice of the Commission's final determination finding a

violation of Section 337; issuance of limited exclusion order and cease and desist orders;

termination of investigation).  The Commission adopted a Limited Exclusion Order barring

importation of products covered by one or more claims in the '319 Patent and issued a cease and

desist order to the investigated companies, including One World.  See id. at 13,519.  Paragraph 1

of the Limited Exclusion Order states:

> Access control systems and components thereof that infringe one or more of claims 1–4, 7–12, 15, and 16 of U.S. Patent No. 7,161,319 ("the '319 patent") that are manufactured by, or on behalf of, or are imported by or on behalf of Techtronic Industries Co., Ltd.; Techtronic Industries North America, Inc.; One World Technologies, Inc.; OWT Industries, Inc.; or Et Technology (Wuxi) Co. or any of their affiliated companies, parents, subsidiaries, agents, or other related business entities, or their successors or assigns, are excluded from entry for consumption into the United States, entry for consumption from a foreign-trade zone, or withdrawal from a warehouse for consumption, for the remaining terms of the '319 patent except under license of the patent owner or as provided by law.

Compl. Ex. O, at 35, Sept. 13, 2018, ECF No. 4-15.  The final determination is under review at the U.S. Court of Appeals for the Federal Circuit.  See Compl. ¶ 19, Sept. 13, 2018, ECF No. 4.

One World redesigned their products as a result of the ITC's final determination, including the Redesigned GDO produced under the Ryobi brand.  See id. ¶ 21.  Ryobi's Redesigned GDO replaces the wired connection between the wall console and the head unit with a wireless connection.  See id. ¶¶ 21–23.  The head unit connects to a receiver through small wires, and the receiver communicates wirelessly to the keypad.  See Pl.'s Mem. 19–21.  The new design is illustrated in the following graphic:



Id. at 21.

One World and its related companies, Techtronic Industries Co. Ltd., Techtronic Industries North America Inc., OWT Industries, Inc., and Et Technology (Wuxi) Co., Ltd.,

submitted a letter to Customs' Intellectual Property Rights Branch ("IPRB"), seeking a ruling

prior to importation that Model Nos. GD126 and GD201 are not covered by the final

determination and are not subject to the Limited Exclusion Order.  The IPRB issued Ruling HQ

H295697 on July 20, 2018, determining that the two models infringe the '319 Patent.  See

Compl. Ex. E, Sept. 13, 2018, ECF No. 4-5 ("HQ H295697").  IPRB concluded that the two

models are included in the ITC's final determination and are subject to the Limited Exclusion

Order.  See id. at 35.

　　　While awaiting Customs' ruling letter, One World attempted to import the Redesigned

GDO.  Customs excluded one entry of the Redesigned GDO (Entry No. 442-75629994) at the

Port of Charleston on June 29, 2018.  See Compl. ¶ 40; see also Compl. Ex. H, Sept. 13, 2018,

ECF No. 4-8; Summons, Sept. 13, 2018, ECF No. 1.  The entry contained 936 pieces of the

Redesigned GDO.  See Compl. Ex. F, at 1, Sept. 13, 2018, ECF No. 4-6 ("HQ H300129").  One

World filed a timely protest with Customs, contesting the exclusion of the entry.  See id. at 1 n.1.

The IPRB denied the protest on September 7, 2018 by issuing Ruling HQ H300129, relying on

its infringement determination from its previous ruling letter.  See id. at 33.

　　　IPRB concluded that the Redesigned GDO infringes Claims 1 and 9 of the '319 Patent.

See HQ H295697 at 35; HQ H300129 at 33.  IPRB found that the merchandise includes "(a) a

wireless, wall-mounted keypad, (b) a wireless receiver, and (c) a pair of wires that extends from

the wireless receiver to the head unit."  HQ H300129 at 35.  Relying on representations made by

One World at a hearing before the IPRB, the IPRB determined that "the pair of wires connecting

the head unit to the wireless receiver" in the Redesigned GDO "is a digital data bus that connects

the wireless receiver to the controller in the head unit."  Id.  IPRB rejected One World's

contention that Chamberlain was estopped from arguing that the '319 Patent encompasses part-wired, part-wireless connections.  Id. at 36–37.

One World initiated this action on September 13, 2018, challenging Customs' denial of its protest.  See Summons; Compl.  One World asserts that Customs improperly excluded the Redesigned GDO because the merchandise is not infringing, and requests that the products be allowed entry into the United States.  See Compl. ¶¶ 52–61.  One World also seeks a declaration that the Redesigned GDO does not infringe Claims 1–4, 7–12, 15, and 16 of the '319 Patent and that Customs may not exclude the subject imports.  See id. ¶¶ 62–66.  Plaintiff alleged in its original complaint that the court has subject matter jurisdiction over this action under 28 U.S.C. § 1581(a), which grants the U.S. Court of International Trade exclusive jurisdiction over any civil action commenced to contest the denial of a protest.  See id. ¶¶ 2–3.

Plaintiff filed a motion for a temporary restraining order and preliminary injunction, seeking entry of the Redesigned GDO.  See Pl. One World Technologies, Inc.'s Mot. TRO & Prelim. Inj., Sept. 13, 2018, ECF No. 5; see also Pl.'s Mem.  Defendants filed a brief opposing Plaintiff's motion, as well as a motion to stay the proceedings pending a final decision in the related matters before the ITC, U.S. Patent and Trademark Office, U.S. Court of Appeals for the Federal Circuit, and the U.S. District Court for the Northern District of Illinois.  See Defs.' Mot. Stay, Sept. 21, 2018, ECF No. 22; see also Defs.' Mem. Supp. Mot. Stay & Opp'n Pl.'s Mot. TRO & Prelim. Inj., Sept. 21, 2018, ECF No. 22 ("Defs.' Opp'n").  The court held a hearing on September 25, 2018.  See Hearing, Sept. 25, 2018, ECF No. 27; see also Conf. Tr., Oct. 3, 2018, ECF No. 33.  One World presented testimony during the hearing from two witnesses, Mr. Mark Huggins and Mr. Stewart Lipoff, and both witnesses were cross-examined by the Government.

Plaintiff filed an amended complaint, adding 28 U.S.C. § 1581(h) as a basis of subject

matter jurisdiction over this action.  See Am. Compl. ¶¶ 2–3, Sept. 28, 2018, ECF No. 30.

Defendants submitted a partial motion to dismiss, contending that the court should dismiss

Plaintiff's amended complaint to the extent that it pleads jurisdiction under 28 U.S.C. § 1581(h)

because Plaintiff has not met the requirements to assert jurisdiction sufficiently under 28 U.S.C.

§ 1581(h).  See Defs.' Partial Mot. Dismiss 1, Oct. 9, 2018, ECF No. 39; see also Defs.' Mem.

Supp. Partial Mot. Dismiss & Mot. Strike Demand Jury Trial & Resp. Pl.'s Supp. Br. Supp. Mot.

TRO & Prelim. Inj. & Request Declaratory J. 1, Oct. 9, 2018, ECF No. 39 ("Defs.' Mem.").

Defendants also filed a motion to strike Plaintiff's request for a jury trial on the complaint.  See

Defs.' Mot. Strike Jury Trial, Oct. 9, 2018, ECF No. 39.  The ITC and Chamberlain filed

motions to intervene in the action under 28 U.S.C. § 1581(h).  See Mot. U.S. Int'l Trade

Comm'n Leave Intervene Supp. Defs., Oct. 12, 2018, ECF No. 43 ("ITC's Mot."); Chamberlain

Group, Inc.'s Mot. Intervene, Oct. 15, 2018, ECF No. 47 ("Chamberlain's Mot.").

During the pendency of this action, the U.S. Patent Trial and Appeal Board ("PTAB")

published a Final Written Decision in response to One World's petition for *inter partes* review of

the '319 Patent.  The PTAB concluded that multiple claims, including Claims 1 and 9 of the '319

Patent, are unpatentable as obvious in light of prior art.  See Pl. One World Technologies, Inc.'s

Notice Suppl. Authority, Oct. 16, 2018, ECF No. 48; see also Ex. 1, Oct. 16, 2018, ECF No. 48-1

("PTAB Op.").

## ANALYSIS

### I.     Subject Matter Jurisdiction

Defendants filed a partial motion to dismiss, arguing that the court does not have subject

matter jurisdiction over Plaintiff's action under 28 U.S.C. § 1581(h).  See Defs.' Mem. 1, 7–11.

Plaintiff alleges that the court possesses subject matter jurisdiction over Customs' "exclusion of goods from entry into the U.S. and its denial of One World's Protest of that exclusion that was filed pursuant to 19 U.S.C. § 1514 (HQ H300129)." Am. Compl. ¶ 2. To the extent that One World requests relief with respect to future imports of its merchandise, One World contends that the court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1581(h). See Pl. One World Technologies, Inc.'s Opp'n Defs.' Omnibus Mot. & Resp. 5, Oct. 15, 2018, ECF No. 45.

The U.S. Court of International Trade, like all federal courts, is one of limited jurisdiction and is presumed to be without jurisdiction unless the contrary appears affirmatively from the record. DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) (citing King Iron Bridge & Mfg. Co. v. Otoe Cty., 120 U.S. 225, 226 (1887)). The party invoking jurisdiction must allege sufficient facts to establish the court's jurisdiction, id. (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)), and therefore bears the burden of establishing it. Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006). The Court is empowered to hear civil actions brought against the United States pursuant to the specific grants of jurisdiction enumerated under 28 U.S.C. § 1581(a)–(i).

## A. Subject Matter Jurisdiction Over the Excluded Entry

The U.S. Court of International Trade has exclusive jurisdiction over any civil action commenced to contest Customs' denial of a protest, in whole or in part, under 19 U.S.C. § 1515. 28 U.S.C. § 1581(a). A party may protest a decision made by Customs, including decisions concerning the entry, liquidation, or reliquidation of merchandise. 19 U.S.C. § 1514(a). Customs excluded one entry of One World's Redesigned GDO. One World submitted a timely protest to the exclusion, which Customs denied. See HQ H300129. The court has subject matter

jurisdiction over the excluded entry pursuant to 28 U.S.C. § 1581(a) because this action contests

Customs' denial of a protest relating to One World's entry.

### B.  Subject Matter Jurisdiction Over Future Entries

An importer may seek review of a ruling prior to the importation of goods under 28

U.S.C. § 1581(h), which provides in relevant part that:

> The Court of International Trade shall have exclusive jurisdiction of any civil action
> commenced to review, prior to the importation of the goods involved, a ruling
> issued by the Secretary of the Treasury, . . . relating to . . . restricted merchandise,
> . . . or similar matters, but only if the party commencing the civil action
> demonstrates to the court that he would be irreparably harmed unless given an
> opportunity to obtain judicial review prior to such importation.

28 U.S.C. § 1581(h).  This provision sets out four requirements to establish jurisdiction: (1)

judicial review must be sought prior to importation; (2) judicial review must be sought of a

ruling, a refusal to issue a ruling, or a refusal to change such a ruling; (3) the ruling must relate to

certain subject matter; and (4) the importer must demonstrate that irreparable harm will result

unless judicial review prior to importation is obtained.  See Best Key Textiles Co., Ltd. v. United

States, 777 F.3d 1356, 1360 (Fed. Cir. 2015); Am. Air Parcel Forwarding Co. v. United States,

718 F.2d 1546, 1551–52 (Fed. Cir. 1983).

Jurisdiction under 28 U.S.C. § 1581(h) is "an extraordinary instrument, and a significant

exception to the procedural requirements traditionally placed on those challenging a decision by

Customs."  Heartland By-Prods., Inc. v. United States, 26 CIT 268, 274, 223 F. Supp. 2d 1317,

1324 (2002).  A plaintiff may invoke subsection (h) "only when the traditional route will inflict

irreparable harm on a plaintiff."  Id. at 274, 223 F. Supp. 2d at 1325.  The legislative history

"makes clear that Congress did not intend for subsection (h) to replace jurisdiction under [28

U.S.C. § 1581(a)], and, therefore, limited the scope of relief under (h) to declaratory judgment,

explicitly precluding injunctive relief." Id.; see also Otter Prods., 38 CIT at __, 37 F. Supp. 3d at

1319 n.8.

One World imported multiple entries totaling thousands of units of the Redesigned GDO

prior to initiating this action and clearly will not be harmed if it does not obtain judicial review

prior to importation.  The court has jurisdiction over the excluded entry pursuant to 28 U.S.C.

§ 1581(a), and Plaintiff may not utilize 28 U.S.C. § 1581(h) as a way of circumventing the

procedures required by 28 U.S.C. § 1581(a).  The court concludes that One World has failed to

establish jurisdiction under 28 U.S.C. § 1581(h), in light of the court's judicial review under 28

U.S.C. § 1581(a).  Defendants' partial motion to dismiss is granted.

## II.  **Defendants' Motion to Strike Demand for Jury Trial**

Plaintiff requested a jury trial in its complaint.  See Am. Compl.  Defendants move to

strike this demand.  See Defs.' Mem. 38–39.  Jury trials are not allowed in cases brought under

28 U.S.C. § 1581(a).  See Wash. Int'l Ins. Co. v. United States, 863 F.2d 877, 879 (Fed. Cir.

1988).  The court grants Defendants' motion to strike Plaintiff's demand for a jury trial.

## III.  **Motions to Intervene**

Both the ITC and Chamberlain filed motions to intervene in this matter pursuant to

USCIT Rule 24.  See ITC's Mot.; Chamberlain's Mot.  Both the ITC and Chamberlain seek

defendant-intervenor status to the extent that One World asserts subject matter jurisdiction under

28 U.S.C. § 1581(h).  Because the court concludes that it does not have subject matter

jurisdiction over One World's claims under 28 U.S.C. § 1581(h), both motions to intervene are

denied.

Chamberlain requests, in the alternative, that the court reconsider Chamberlain's motion

to appear as *amicus curiae* to the extent that One World seeks relief under 28 U.S.C. § 1581(a).

See Chamberlain's Mot. 1.  The court denied Chamberlain's first motion to appear as *amicus curiae*.  See Order, Sept. 24, 2018, ECF No. 25.  The court reiterates that a party is prohibited from intervening in an action contesting Customs' denial of a protest and alleging jurisdiction under 28 U.S.C. § 1581(a).  See 28 U.S.C. § 2631(j)(1)(A); see also Otter Prods., 38 CIT at __, 37 F. Supp. 3d at 1319 (denying a motion to appear as *amicus curiae* in action over which the court exercised jurisdiction under 28 U.S.C. § 1581(a)); Corning Gilbert Inc. v. United States, 36 CIT __, __, 837 F. Supp. 2d 1303, 1305 (2012) (same).  The court denies Chamberlain's motion to intervene in the instant matter under 28 U.S.C. § 1581(a).

## IV.    Plaintiff's Motion for Injunctive Relief

Rule 65 of the Rules of this Court allows for a court to grant injunctive relief in an action. USCIT R. 65.  The court considers four factors when evaluating whether to grant a temporary restraining order or preliminary injunction:  (1) whether the party will incur irreparable harm in the absence of such injunction; (2) whether the party is likely to succeed on the merits of the action; (3) whether the balance of hardships favors the imposition of the injunction; and (4) whether the injunction is in the public interest.  See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see also Wind Tower Trade Coal. v. United States, 741 F.3d 89, 95 (Fed. Cir. 2014).  No one factor is "'necessarily dispositive,' because 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'"  Belgium v. United States, 452 F.3d 1289, 1292–93 (Fed. Cir. 2006) (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)).  The factors should be weighed according to a "sliding scale," which means that a greater showing of irreparable harm in Plaintiff's favor lessens the burden on Plaintiff to show a likelihood of success on the merits.  See id.  The court evaluates each of the four factors in turn.

### A.  Irreparable Harm

Plaintiff must show that it will suffer irreparable harm absent a grant of injunctive relief.

See Winter, 555 U.S. at 20.  Irreparable harm includes "a viable threat of serious harm which

cannot be undone."  Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983)

(internal citations omitted).  An allegation of financial loss alone generally does not constitute

irreparable harm if future money damages can provide adequate corrective relief.  See Sampson

v. Murray, 415 U.S. 61, 90 (1974).  Bankruptcy or substantial loss of business may constitute

irreparable harm, however, because "loss of business renders a final judgment ineffective,

depriving the movant of meaningful judicial review."  Harmoni Int'l Spice, Inc. v. United States,

41 CIT __, __, 211 F. Supp. 3d 1298, 1307 (2017) (citing Doran v. Salem Inn, Inc., 422 U.S.

922, 932 (1975)).  "Price erosion, loss of goodwill, damage to reputation, and loss of business

opportunities" may also constitute irreparable harm.  Celsis In Vitro, Inc. v. CellzDirect, Inc.,

664 F.3d 922, 930 (Fed. Cir. 2012).

One World argues that, absent injunctive relief, One World will be unable to supply The

Home Depot with enough inventory to meet customer demands, especially during the holiday

season.  See Pl. One World Technologies, Inc.'s Suppl. Br. Supp. Mot. TRO & Prelim. Inj. &

Req. Declaratory J. 44–47, Oct. 4, 2018, ECF No. 34.  One World claims that its inability to

provide a consistent supply of the Redesigned GDO will cause The Home Depot to terminate its

existing business relationship with One World.  See id.  One World alleges that the termination

of its relationship with The Home Depot will preclude One World from entering the garage door

opener market because The Home Depot is the sole distributor of One World's Ryobi-branded

products, including the Redesigned GDO.  See id.

At the hearing, One World presented witness testimony from Mark Huggins, One World's Senior Vice President of Product Development.  Mr. Huggins described how the new garage door openers were designed at The Home Depot's request for a "game changer" in the market.  <u>See</u> Conf. Tr. at 145:20–146:21.  Mr. Huggins testified that One World has a close relationship with The Home Depot and he believes that The Home Depot will terminate its program with One World if the court denies entry of the Redesigned GDO into commerce.  <u>See</u> <u>id.</u> at 142:24–144:6, 161:3–163–4.[2]

Without injunctive relief, One World claims that it will not only suffer a permanent loss of business, but it will lose its market share and innovative advantage.  One World claims that its reputation with its exclusive supplier will be irrevocably damaged.  The court finds that One World has demonstrated irreparable harm for the purposes of a preliminary injunction through the credible testimony and declarations of its witnesses.

**B.  Likelihood of Success on the Merits**

In order to obtain a preliminary injunction, Plaintiff bears the burden of showing that it is likely to succeed on the merits of its claims.  <u>See</u> <u>Winter</u>, 555 U.S. at 20.  Customs conducted an infringement analysis and determined that the Redesigned GDO met each and every limitation of Claims 1 and 9 of the '319 Patent.  <u>See</u> HQ H295697 at 24–28.  Customs denied One World's protest contesting the exclusion.  The issue before the court is whether Customs improperly

---

[2] In a subsequently-submitted declaration, Mr. Huggins states that [[

]] Decl. Mark Huggins ¶¶ 6–7, Dec. 7, 2018, ECF No. 63-1.

denied One World's protest regarding the one entry of the Redesigned GDO.[3]  The court reviews

actions involving denied protests *de novo*.  28 U.S.C. § 2640(a)(1).

## 1.  Deference

The Government argues that the two ruling letters, HQ H295697 and HQ H300129,

issued by IPRB deserve deference under United States v. Mead Corporation, 533 U.S. 218

(2001), because they are "formal, thorough, well-reasoned, and persuasive."  See Defs.' Suppl.

Br. 4–5.  A Customs ruling may "at least seek a respect proportional to its power to persuade,"

and may "claim the merit of its writer's thoroughness, logic and expertness, its fit with prior

interpretations, and any other sources of weight."  Mead, 553 U.S. at 2175–76 (internal citations

omitted); see also Corning Gilbert Inc. v. United States, 37 CIT __, __, 896 F. Supp. 2d 1281,

1288 (2013).  As explained below, the court finds that the IPRB failed to consider substantively

Plaintiff's multiple arguments, including the effect of prior art on claim construction.  Because

the IPRB's letters do not show "thoroughness, logic and expertness" with respect to Plaintiff's

contentions here, the court does not find the IPRB's letters sufficiently persuasive to merit

deferential treatment under Mead.

## 2.  Infringement

Plaintiff alleges that Customs denied its protest due to an incorrect interpretation of the

ITC's findings.  Plaintiff argues that the asserted claims of the '319 Patent do not cover the

---

[3] To be clear, One World is not contesting the ITC's infringement findings as applied to the Original GDOs in this case.  ITC infringement findings are final and conclusive unless appealed to the U.S. Court of Appeals for the Federal Circuit.  See 19 U.S.C. § 1337(c); see also Corning Gilbert, 37 CIT __, __, 896 F. Supp. 2d 1281, 1288 (2013).  One World's action before the court concerns Customs' application of the ITC's Limited Exclusion Order to the excluded entry of the Redesigned GDO.

Redesigned GDO, which use wireless communications, and to the extent that they do, the claims

are invalid.  See Pl.' Mem. 11.

The court applies the requisite two-step patent infringement analysis to determine

whether the Redesigned GDO infringes Claims 1 and 9 of the '319 Patent.  See Tessera, Inc. v.

Int'l Trade Comm'n, 646 F.3d 1357, 1364 (Fed. Cir. 2011); see also Corning Gilbert, 37 CIT at

__, 896 F. Supp. 2d at 1291.  The court must first construe the contested claim terms.  See

Tessera, 646 F.3d at 1364.  The ordinary and customary meaning of claim terms are the

meanings that the terms would have to a person of ordinary skill in the art.  See Phillips v. AWH

Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc).  The court turns next to whether the

product at issue contains each limitation of the patent's claim.  See Tessera, 646 F.3d at 1364.

To find that the Redesigned GDO infringes a claim of the '319 Patent, the court must find each

and every limitation of the claim embodied in the Redesigned GDO.  See V–Formation, Inc. v.

Benetton Gr. SpA, 401 F.3d 1307, 1312 (Fed. Cir. 2005) ("Literal infringement requires that

each and every limitation set forth in a claim appear in an accused product."); Atlantic

Thermoplastics Co., Inc. v. Faytex Corp., 970 F.2d 834, 846 (Fed. Cir. 1992) ("An accused

infringer can avoid infringement by showing that the accused device lacks even a single claim

limitation.").

### a.  Claim Construction

The Parties contest two independent claims of the '319 Patent in this action: Claim 1 and

Claim 9.  Claim 1 of the '319 Patent states:

> An improved garage door opener comprising a motor drive unit for opening and
> closing a garage door, said motor drive unit having a microcontroller and a wall
> console, said wall console having a microcontroller, said microcontroller of said
> motor drive unit being connected to the microcontroller of the wall console by
> means of a digital data bus.

'319 Patent at 23.  Claim 9 of the '319 Patent states:

> An improved garage door opener comprising a motor drive unit for opening and
> closing a garage door, said motor drive unit having a controller and a wall console,
> said wall console having a controller, said controller of said motor drive unit being
> connected to the controller of the wall console by means of a digital data bus.

Id.  The language is nearly identical, except Claim 1 references a "microcontroller" and Claim 9

discusses a "controller."  For the sake of clarity, the court uses the term "controller" when

referring to both claims.

In interpreting Claims 1 and 9 of the '319 Patent, the ITC adopted the following

constructions based on the plain and ordinary meaning of the terms in the ITC's 1016

Investigation:

| Term/Phrase | ITC Construction |
|---|---|
| "wall console" | "a wall-mounted control unit" |
| "digital data bus" | "a conductor or group of conductors which conveys digital data" |
| "controller" | "any type of control device" |
| "motor drive unit" | "unit where a driven motor resides" |

Compl. Ex. B, at 120–24, Sept. 13, 2018, ECF No. 4-2 ("ITC ALJ Determ."); see also Mem. P.

& A. Supp. Pl. One World Technologies, Inc.'s Mot. TRO & Prelim. Inj. Ex. C, at 19, Sept. 13,

2018, ECF No. 6-3.  The ITC Administrative Law Judge construed an additional term based on

the prosecution history of the '319 Patent and in harmony with the patent's other claims:

| Term/Phrase | ITC Construction |
|---|---|
| "motor drive unit" | "unit where a driven motor resides" |

ITC ALJ Determ. at 124–28.  The court construes the terms similarly here.

Plaintiff proffered Mr. Stewart Lipoff as an expert witness at the hearing.  Mr. Lipoff

possesses two bachelors' degrees in electrical engineering and in engineering physics, and two

masters' degrees in electrical engineering and in business administration.  See Conf. Tr. at 63:2–

63:7.  He also has educational certificates and approximately fifty years of career experience,

including experience with embedded control systems.  See id. at 63:8–64:6.  Mr. Lipoff testified

as to the plain, ordinary usage of the term "conductor" to a person of ordinary skill in the art, as

well as its consistent usage within the '319 Patent.  See id. at 79:18–80:9.  Mr. Lipoff defined the

term "conductor" as "a metallic set of wires that are capable of conveying digital data."  Id. at

80:3–80:4.  Mr. Lipoff represented further that, although not part of the construction, a conductor

intrinsically is capable of carrying electric power, which serves to provide power to the product

in the '319 Patent.  See id. at 80:5–80:9.  The court interprets "conductor" to mean a metallic

wire or set of wires.

IPRB represented the claim language on a limitation-by-limitation basis as follows:

| Limitation | Claim Language |
| --- | --- |
| A | an improved garage door opener comprising |
| B | a motor drive unit for opening and closing a garage door, |
| C | said motor drive unit having a controller and |
| D | a wall console, |
| E | said wall console having a controller, |
| F | said controller of said motor drive unit being connected to the controller of the wall console by means of a digital data bus. |

See HQ H295697 at 5.  Limitations A–E were not contested in the IPRB's review process.  See id. at 24–25.  One World argues that IPRB misapplied Limitation F in the first ruling letter, which then informed IPRB's second letter denying One World's protest.

Limitation F requires that the motor drive unit's controller be connected to the wall console's controller by means of a "digital data bus," or "conductors or group of conductors which conveys digital data."  The court finds that "conductor" within Limitation F refers to a metallic wire or set of wires.  Based on the definition of "conductor" to a person of ordinary skill in the art, Limitation F requires that the motor drive unit's controller be connected to the wall console's controller by a physical wire or set of wires.[4]

The IPRB construed the '319 Patent to encompass a device that combines wired and wireless communication links.  See HQ H295697 at 27–28; HQ H300129 at 35.  The court finds that the IPRB's position is inconsistent with a reading of the terms "digital data bus" and "conductor," which requires a physical wire or set of wires.  The court concludes that the IPRB's interpretation has no merit.[5]

To interpret the term "digital data bus" and Limitation F otherwise potentially renders Claims 1 and 9 invalid in light of Doppelt (Chamberlain's U.K. Patent Application G.B. 2,312,540) and other patents (e.g., Jacobs, U.S. Patent No. US 5,467,266).  By statute, an invention is unpatentable due to prior art if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the

---

[4] The PTAB noted that "a wireless transmitter cannot be the wall console of the '319 Patent because a wireless radio frequency link is not a digital data bus."  See PTAB Op. at 80 n.28.

[5] The PTAB found a similar argument advanced by Chamberlain unpersuasive.  See PTAB Op. at 82 ("Patent Owner admits the claims of the '319 [P]atent require a wall console that communicates with the motor drive unit over a *wired* communications link.") (citing Chamberlain's brief in the ITC's 1016 Investigation).

effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). An ambiguous claim

should be construed in such a way as to preserve its validity. See Ruckus Wireless, Inc. v.

Innovative Wireless Sols., LLC, 824 F.3d 999, 1004 (Fed. Cir. 2016); Phillips, 415 F.3d at 1327.

The ITC Administrative Law Judge found in the ITC's 1016 Investigation that the

combination of the Doppelt and Jacobs patents discloses every limitation recited in Claims 1 and

9, but found that One World had not proven the claims to be unpatentable by clear and

convincing evidence. See ITC ALJ Determ. at 170–71, 188. On the contrary, the PTAB found

that One World demonstrated that the combined teachings of Doppelt, Jacobs, and applicant

admitted prior art account for each of the limitations required by Claims 1 and 9. See PTAB Op.

at 49.

The court construes Limitation F as encompassing only wired connections between the

motor drive unit's controller and the wall controller. To the extent that the IPRB found

otherwise, the court concludes that the IPRB's determination was incorrect.

### b.  Application of the Claims to the Redesigned GDO

The court applies the limitations of Claims 1 and 9, as interpreted above, to the

Redesigned GDO. See Tessera, 646 F.3d at 1364. To find that the Redesigned GDO infringes

the independent claims of the '319 Patent, the court must find each and every limitation of the

claims embodied in the Redesigned GDO. See V–Formation, 401 F.3d at 1312; Atlantic

Thermoplastics, 970 F.2d at 846.

There is no dispute that the Redesigned GDO contains Limitations A–E. The

Redesigned GDO is garage door opener that contains: a motor drive unit that opens and closes a

garage door (the "head unit"), a controller attached to the motor drive unit, and a wall console

that also has a controller. See HQ H295697 at 24–25. The Redesigned GDO does not contain

Limitation F because the controller in the head unit communicates with the wall console's

controller through a wireless connection, whereas Limitation F contemplates a wired connection

specifically.  To the extent that the wires connecting the head unit's controller to the head unit

constitute a part-wired, part-wireless connection, Limitation F is not implicated because it is not

a completely wired connection.

Because the Redesigned GDO does not contain all limitations of the '319 Patent—in

other words, the head unit's controller does not communicate with the wall console by means of

a "digital data bus," or wired connection—the court concludes that the Redesigned GDO does

not infringe the '319 Patent.  The court's findings are consistent with the recent PTAB Final

Written Decision issued in October 2018.  In concluding otherwise, IPRB improperly determined

that the Redesigned GDO fell within the scope of the ITC's Limited Exclusion Order and

excluded the entry of the Redesigned GDO.  The court concludes that One World has shown a

likelihood of success on the merits of this action.

### C.  Balance of Hardships

When evaluating a request for a preliminary injunction, it is the court's responsibility to

balance the hardships on each of the Parties.  See Winter, 555 U.S. at 20.  One World points to

its allegations of irreparable harm in support of this factor.  See Pl.'s Mem. 32.  Defendants

contend that the Government has an interest in the administration and enforcement of customs

law, including the ITC's Limited Exclusion Order.  See Defs.' Opp'n 34; Defs.' Mem. 33.  The

court finds that the balance of hardships does not tip in favor of either Party.

### D.  Public Interest

Plaintiff must also address whether the grant of a preliminary injunction serves the public

interest.  See Winter, 555 U.S. at 20.  Defendants argue that the public interest is best served by

the Government's protection and enforcement of intellectual property rights.  <u>See</u> Defs.' Opp'n

35–36; Defs.' Mem. 34.  One World acknowledges this interest in protecting intellectual

property rights, but counters that the "public is not served by enforcing a patent beyond its metes

and bounds."  Pl.'s Mem. 33.  One World argues that patent law promotes innovation by

encouraging companies to "design around patents."  <u>Id.</u>  The court finds that this public interest

factor does not tip in favor of either Party.

The court concludes that the balance of hardships and public interest are neutral between

the Parties, but finds that Plaintiff has demonstrated credible irreparable harm and a likelihood of

success on the merits.  Plaintiff's motion for a preliminary injunction is granted.

## CONCLUSION

For the aforementioned reasons, the court concludes that subject matter jurisdiction over

this action does not exist under 28 U.S.C. § 1581(h).  Defendant's partial motion to dismiss is

granted.  The court exercises subject matter jurisdiction solely under 28 U.S.C. § 1581(a).

Because jury trials are not permitted for cases brought under 28 U.S.C. § 1581(a), the

court grants Defendants' motion to strike Plaintiff's request for a jury trial.

Entities are statutorily prohibited under 28 U.S.C. § 2631(j)(1)(A) from intervening in

actions brought under 28 U.S.C. § 1581(a).  The court denies the motions to intervene filed by

the ITC and Chamberlain.

The court finds that Plaintiff has made the requisite showing for a preliminary injunction.

Plaintiff has proffered sufficient evidence of irreparable harm based on credible witness

testimony that its relationship with its exclusive distributor, The Home Depot, will be

permanently damaged absent a preliminary injunction.  Plaintiff has proven that it is likely to

succeed on the merits of the action.  Pursuant to an evaluation of Claims 1 and 9 of the '319

Patent, the court concludes that One World's Redesigned GDO does not infringe the '319 Patent

because the '319 Patent is limited to wired connections only.  The court finds that the IPRB's

determination that the '319 Patent encompasses a part-wired and part-wireless connection was

incorrect, and Customs improperly excluded One World's Redesigned GDO from entry into the

United States.  The court grants Plaintiff's motion for a preliminary injunction.

     An order will issue accordingly.


    _/s/ Jennifer Choe-Groves_
    Jennifer Choe-Groves, Judge


Dated: _December 14, 2018_
    New York, New York